# United States Court of Appeals for the Federal Circuit

06-1032

INTEL CORPORATION and DELL, INC.,

Plaintiffs-Appellees,

v.

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,

Defendant-Appellant.

_____

06-1040

MICROSOFT CORPORATION, HEWLETT-PACKARD COMPANY,
and NETGEAR, INC.,

Plaintiffs-Appellees,

v.

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,

Defendant-Appellant.


Jeffrey G. Randall, Skadden, Arps, Slate, Meagher & Flom LLP, of Palo Alto, California, argued for plaintiffs-appellees in appeal 06-1032. Of counsel on the brief for Intel Corporation was Allan M. Soobert, of Washington, DC. Of counsel on the brief for Dell, Inc. was Stephen E. Taylor, Taylor & Company Law Offices, Inc., of San Francisco, California.

Barry K. Shelton, Fish & Richardson, P.C., of Austin, Texas, argued for plaintiffs-appellees in appeal 06-1040. Of counsel on the brief for Microsoft Corporation were John E. Gartman and Joseph P. Reid, of San Diego, California. Of counsel on the brief for Hewlett-Packard Company was Gregory G. Lavorgna, Drinker Biddle & Reath LLP, of Philadelphia, Pennsylvania. Of counsel on the brief for Netgear, Inc. were James A. DiBoise, Jennifer A. Ochs, and Christopher R. Parry, Wilson Sonsini Goodrich & Rosati, of Palo Alto, California. Of counsel for Netgear, Inc. was Ryan R. Smith.

James M. Wagstaffe, Kerr & Wagstaffe, LLP, of San Francisco, California, argued for defendant-appellant in appeals 06-1032 and 06-1040. Of counsel on the brief were Daniel J. Furniss and Gary H. Ritchey, Townsend and Townsend and Crew LLP, of Palo Alto, California; and Nancy L. Tompkins, of San Francisco, California.

Appealed from:  United States District Court for the Northern District of California

Judge Martin J. Jenkins

# United States Court of Appeals for the Federal Circuit

06-1032


INTEL CORPORATION and DELL INC.,

Plaintiffs-Appellees,

v.

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,

Defendant-Appellant.

_____


06-1040


MICROSOFT CORPORATION, HEWLETT-PACKARD COMPANY,
and NETGEAR, INC.,

Plaintiffs-Appellees,

v.

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,

Defendant-Appellant.

_____

DECIDED: July 14, 2006
_____



Before MICHEL, Chief Judge, PLAGER, Senior Circuit Judge, and BRYSON, Circuit Judge.

MICHEL, <u>Chief Judge</u>.

In these interlocutory appeals, Commonwealth Scientific and Industrial Research Organisation ("CSIRO") appeals from orders of the United States District Court for the Northern District of California in related cases, denying its motions to dismiss both suits for lack of subject-matter jurisdiction. <u>Intel Corp. v. Commonwealth Sci. and Indus. Research Org.</u>, No. C-05-1886, slip op. (N.D. Cal. Sept. 13, 2005) ("<u>Intel</u>"); <u>Microsoft Corp. v. Commonwealth Sci. and Indus. Research Org.</u>, No. C-05-1894, 2005 WL 2233861 (N.D. Cal. Sept. 13, 2005) ("<u>Microsoft</u>"). Since we agree that CSIRO is not entitled to claim immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, because the "commercial activity" exception applies, we affirm the district court's orders in this respect. The appeal is otherwise dismissed insofar as it raises issues not appropriate for interlocutory review.

## I. BACKGROUND

Defendant-appellant CSIRO, Australia's national science agency, is the assignee of United States Patent No. 5,487,069, directed to wireless local area networks. CSIRO asserts that the patent covers the Institute of Electrical and Electronics Engineers ("IEEE") standards 802.11a and 802.11g, i.e., the preferred specifications for high speed data transfer.[1] Following CSIRO's attempts to license the '069 patent to various American companies, these declaratory-judgment actions were filed by Intel Corp. ("Intel"), Dell Inc. ("Dell"), Microsoft Corp. ("Microsoft"), Hewlett-Packard Co. ("HP") and Netgear, Inc. ("Netgear").

---

[1] CSIRO's letters initiating licensing negotiations explain that, pursuant to IEEE's request, it had agreed to grant licenses to the '069 patent on a reasonable, nondiscriminatory basis.

A.  Intel and Dell

In January 2004, CSIRO initiated licensing negotiations with Dell.  Dell manufactures and sells products that incorporate wireless networking components purchased from various suppliers, including Intel.  Although Dell repeatedly suggested that CSIRO contact its suppliers instead, CSIRO never contacted Intel directly.  In June 2004, counsel for CSIRO sent Dell proposed licensing terms, emphasizing that its offer was "available for only a limited time."  Under its proposed arrangement, a licensee was rewarded with a 50% discount in the base royalty rate if a license was taken within 90 days; after that, the discount was gradually reduced to 37.5% (<120 days), 25% (<150 days), 12.5% (<180 days) and 0% (>180 days).  CSIRO later explained that after 187 days, the offer would close and it would then consider litigation "to block firms that do not take voluntary licenses."[2]  Around this time, Dell requested that Intel indemnify it against CSIRO's claims of patent infringement and Intel agreed to do so.  (Intel has also agreed to indemnify HP.)

On September 28, 2004, CSIRO formally offered Dell a license, noting that "this offer is only open for acceptance for a period of 187 days, after which time the licenses under this Voluntary Licensing Program will not be available."  It included another copy of the proposed licensing terms and a draft license agreement.  On December 20, 2004, CSIRO agreed to a 30-day extension of all the dates in its offer letter.  The voluntary license offer thus expired on May 8, 2005.

---

[2]     Indeed, on February 2, 2005, CSIRO initiated a patent infringement suit against Buffalo Technology (USA), Inc. and Buffalo, Inc. (collectively "Buffalo"), in the United States District Court for the Eastern District of Texas.  After the instant suits were filed, both sets of plaintiffs asked the Judicial Panel on Multidistrict Litigation to transfer and consolidate their cases with the action against Buffalo, but their motions were denied on October 18, 2005.

On May 9, 2005, Intel and Dell filed a complaint in the United States District Court for the Northern District of California, seeking a declaratory judgment of non-infringement and invalidity with respect to the '069 patent. The case was assigned to Judge Martin J. Jenkins. On May 31, 2005, CSIRO moved to dismiss the complaint on the grounds of insufficiency of process and defective service pursuant to FRCP 12(b)(4) and 12(b)(5), but the motion was denied. Intel Corp. v. Commonwealth Sci. and Indus. Research Org., No. C-05-1886, 2005 WL1656903 (N.D. Cal. July 8, 2005).

On August 1, 2005, CSIRO moved to dismiss for lack of subject-matter jurisdiction. On September 13, 2005, this motion was denied as well. The district court first evaluated whether there was an actual case or controversy as required by the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202. Despite CSIRO's insistence that licensing negotiations were still ongoing, it found that the license offer had expired and that it was objectively reasonable for Dell to be apprehensive that litigation would be the next step, especially since CSIRO had already filed one patent infringement lawsuit. Because the parties agreed that Dell produced an allegedly infringing device, the court concluded that there was sufficient case or controversy for purposes of establishing subject-matter jurisdiction under the DJA. As to Intel, it also had a reasonable apprehension of being subjected to a lawsuit for patent infringement due to its indemnification agreement with Dell. Intel, slip op. at 9-12.

The district court then went on to consider whether CSIRO was immune from suit under the FSIA or whether the commercial activity exception set forth in 28 U.S.C. § 1605(a)(2) applied. With respect to Dell, it observed that "[t]he parties appear to agree that CSIRO's interaction with Dell constituted commercial activity under the

FSIA."[3]  Id. at 13.  As to Intel, it noted that "[t]he parties have not cited, and the Court has not found, a case directly on point."  Id.  The court denied the motion to dismiss, reasoning that "CSIRO indirectly engaged in commercial activity with Intel" because its licensing negotiations with Dell "necessarily implicated Intel."  Id.

CSIRO filed a timely notice of appeal.  Intel responded by filing a motion for an order certifying the appeal as waived or otherwise frivolous, which was denied.  The district court again emphasized that it was unaware of any cases "expressly holding that initiation and involvement in licensing negotiations over a U.S. patent constitutes commercial activity sufficient to vitiate sovereign immunity under the FSIA," although it was "difficult to conceive of how CSIRO's conduct could be characterized as anything other than commercial."  Intel Corp. v. Commonwealth Sci. and Indus. Research Org., No. C-05-1886, slip op. at 5 (N.D. Cal. Nov. 11, 2005).  Yet, while the court was not persuaded by CSIRO's argument, it declined to find the appeal frivolous.

B.  Microsoft, HP and Netgear

On April 11, 2003, CSIRO initiated licensing negotiations with HP.  During a meeting on January 13, 2004, CSIRO explained its two-phase licensing program, wherein it would first make a formal licensing offer with royalty discounts that decreased over time, then pursue litigation against parties that failed to take a voluntary license.  On May 10, 2004, counsel for CSIRO allegedly threatened HP's in-house counsel with a lawsuit if HP did not take a license.  On June 21, 2004, CSIRO extended its formal offer, enclosing its proposed terms and a draft agreement.  On October 13, 2004, CSIRO

---

[3]        In its motion to dismiss, CSIRO only argued that it was immune to a suit filed by Intel, while recognizing that "[i]n contrast, as CSIRO and Dell have engaged in license negotiations, the [commercial activity] exception arguably applies."  See Intel, slip op. at 12, n.4.

offered HP a temporary covenant not to sue (while it asserted the '069 patent against others) for $2.5 million, but HP did not accept. On December 20, 2004, as the 187-day offer period was nearing an end, CSIRO wrote HP, reiterating that it "may decide to take further action against companies which have not availed themselves of the opportunity to have a voluntary license." Although it was "not threatening to bring any action against HP at this time," CSIRO stressed that once the offer expired, a voluntary license "may not necessarily be available thereafter at any price." A few days later, the offer expired.

On April 14, 2003, CSIRO initiated licensing negotiations with Netgear. CSIRO extended its formal licensing offer on August 10, 2004, enclosing its proposed licensing terms and a draft agreement. In the months that followed, Netgear made a few counterproposals, but the parties did not reach an agreement. The voluntary license period ended in February 2005.

On September 29, 2003, CSIRO also contacted Microsoft regarding a potential license for the '069 patent. A formal offer, including a copy of proposed licensing terms and a draft license agreement, was extended on September 20, 2004. The offer expired in March 2005.

Microsoft, HP and Netgear[4] filed a complaint in the United States District Court for the Northern District of California on May 9, 2005, (the same day Intel and Dell filed their complaint), seeking a declaratory judgment of non-infringement, patent invalidity, patent misuse, equitable estoppel and laches. On May 31, 2005, CSIRO moved to dismiss the complaint on the grounds of insufficiency of process and defective service

---

[4] Although Apple Computer, Inc. was originally a party as well, it voluntarily dismissed its claims without prejudice on June 6, 2005.

pursuant to FRCP 12(b)(4) and 12(b)(5). On June 24, 2005, this case was related to the Intel case and reassigned to Judge Jenkins. On July 1, 2005, the parties resolved the pending motion via stipulation.

On August 8, 2005, CSIRO filed a motion to dismiss for lack of subject-matter jurisdiction, but it was denied on September 13, 2005, for essentially the same reasons described above. With respect to the question of foreign sovereign immunity, the district court found that CSIRO's attempts to secure patent licenses in order to generate royalty income was "not an activity peculiar to a sovereign state, but [wa]s, instead, a commercial activity that a private entity would engage in." Microsoft, at *7. CSIRO filed a timely notice of appeal. Plaintiffs responded by filing a motion for an order certifying the appeal as waived or otherwise frivolous, which was denied on November 11, 2005.

We have jurisdiction over these interlocutory appeals pursuant to 28 U.S.C. § 1292(c)(1).

## II.    DISCUSSION

Pursuant to the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). Determining whether subject-matter jurisdiction exists therefore "entails an application of the substantive terms of the [FSIA] to determine whether one of the specified exceptions to immunity applies." Verlinden B.V. v. Central Bank of Nig., 461 U.S. 480, 498 (1983). On procedural issues, we apply the standard of review of the regional circuit "unless the issue pertains to or is unique to patent law." Sulzer Textil A.G. v. Picanol N. V., 358 F.3d 1356, 1363 (Fed. Cir. 2004)

06-1032
06-1040
7

(internal citation omitted). The Ninth Circuit considers "the existence of sovereign immunity and subject matter jurisdiction under the [FSIA]" questions of law that are reviewed de novo. Park v. Shin, 313 F.3d 1138, 1141 (9th Cir. 2002). Even if these appeals raised issues unique to patent law, this court also reviews questions of statutory interpretation without deference. Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 425 F.3d 1366, 1373 (Fed. Cir. 2005).

Under the "collateral order" doctrine, the denial of a claim of immunity is typically appealable immediately. Mitchell v. Forsyth, 472 U.S. 511, 525 (1985). In contrast, the denial of a motion to dismiss for lack of subject-matter jurisdiction on other grounds is generally not subject to interlocutory review. Catlin v. United States, 324 U.S. 229, 236 (1945) ("[D]enial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable."). This court, however, has the power to exercise pendent appellate jurisdiction over other issues, particularly where they are "inextricably intertwined with" or "necessary to ensure meaningful review of" a properly appealed collateral order. Swint v. Chambers County Comm'n, 514 U.S. 35, 51 (1995).

These appeals revolve around the interpretation of 28 U.S.C. § 1605(a)(2), which provides:

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

This is an issue of first impression for this court.

06-1032
06-1040

8

CSIRO argues that patent licensing negotiations that do not result in a fully-executed, binding contract do not qualify as "commercial activity." It concedes that if its negotiations with potential licensees had been successful, (i.e., if the proffered license agreement had been signed), it would not be entitled to claim immunity under the FSIA because the commercial activity exception would apply. In the alternative, CSIRO argues that the declaratory-judgment suits are not "based upon" the alleged commercial activity. We reject both arguments.

"Commercial activity" is statutorily defined to mean "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The FSIA further indicates that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Id. Yet, as noted by the Supreme Court, this is not particularly instructive.

> This definition, however, leaves the critical term "commercial" largely undefined: The first sentence merely establishes that the commercial nature of an activity does not depend upon whether it is a single act or a regular course of conduct; and the second sentence merely specifies what element of the conduct determines commerciality (i.e., nature rather than purpose), but still without saying what "commercial" means.

Republic of Arg. v. Weltover, Inc., 504 U.S. 607, 612 (1992).

The legislative history indicates that the FSIA was meant to "codify the so called 'restrictive' principle of sovereign immunity, . . . [wherein] the immunity of a foreign state is 'restricted' to suits involving a foreign state's public acts (jure imperii) and does not extend to suits based on its commercial or private acts (jure gestionis)." H.R. Rep. No. 94-1487, at 7 (1976), as reprinted in 1976 U.S.C.C.A.N. 6604, 6605. Consequently, "commercial activity" was broadly defined.

> Certainly, if an activity is customarily carried on for profit, its commercial nature could readily be assumed. At the other end of the spectrum, a single contract, if of the same character as a contract which might be made by a private person, could constitute a "particular transaction or act."

Id. at 16 & 6615. But, Congress did not set forth an exhaustive list of activities which might constitute "commercial activity." Indeed, the drafters expressly contemplated that "[t]he courts would have a great deal of latitude in determining what is a 'commercial activity' for purposes of this bill." Id.

Considering the meaning of "commercial activity" in the context of the restrictive theory of sovereign immunity and the public/private dichotomy it creates, the Supreme Court has held that the exception to immunity set forth in § 1605(a)(2) applies where the foreign state "'do[es] not exercise powers peculiar to sovereigns;' rather, it 'exercise[s] only those powers that can also be exercised by private citizens.'" Weltover, 504 U.S. at 614 (internal citation omitted). CSIRO's acts of (1) obtaining a United States patent and then (2) enforcing its patent so it could reap the profits thereof—whether by threatening litigation or by proffering licenses to putative infringers—certainly fall within the latter category. Indeed, we have expressly recognized, in another context, that "a patentee's attempt to conduct license negotiations is a commercial activity." Phillips Plastics Corp. v. Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1054 (Fed Cir. 1995).

Nor are we persuaded that a contract must be fully consummated in order to qualify as commercial activity. Section 1603(d) refers to "a particular commercial transaction or act," which suggests that this definition necessarily includes more than just completed transactions. While CSIRO argues that the legislative history sets the lower boundary of the spectrum at a single contract, we interpret that sentence as merely providing one example of "a particular commercial transaction or act."

06-1032
06-1040

10

As to the question of whether the instant lawsuits are "based on" CSIRO's commercial activities, neither the FSIA nor its legislative history explicitly define this phrase. The Supreme Court has held that, in the context of § 1605(a)(2), "based on" means that the commercial activity by the foreign state forms "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." Saudi Arabia, 507 U.S. at 357. Although the Court recognized that it is not "necessarily require[d] that each and every element of a claim be commercial activity by a foreign state," id. at 358 n.4, this interpretation "calls for something more than a mere connection with, or relation to" the commercial acts. Id. at 358 (finding that the plaintiff's employment contract, while commercial in nature, did not form the basis for his personal injury claims resulting from unlawful detention and torture by the Saudi government because it was too far removed from the tortious acts).

Here, we are persuaded that these declaratory-judgment actions are "based on" CSIRO's commercial acts of obtaining and asserting a United States patent. In order to prevail, the plaintiffs-appellees must prove that CSIRO attempted to enforce its patent against them. Moreover, to the extent that CSIRO made certain representations as to the scope and validity of the '069 patent when it proffered licenses to them, these are central to their claims of non-infringement, invalidity and patent misuse.

\* \* \*

CSIRO further argues that the district court erred in finding that the plaintiffs had a reasonable apprehension of imminent suit such that there was an actual controversy within the meaning of the DJA. Because the orders denying CSIRO's motions to dismiss are otherwise not properly reviewable on interlocutory appeal and do not raise

questions that are inextricably intertwined with our interpretation of the FSIA, we decline to reach this issue. Regardless, the exercise of pendent jurisdiction is discretionary and, in our judgment, it should not be exercised here, even if the issues were inextricably intertwined.

### III. CONCLUSION

For the aforementioned reasons, we affirm the district court's conclusion that CSIRO is not entitled to claim immunity under the FSIA. Because we decline to exercise pendent appellate jurisdiction over the question of subject-matter jurisdiction under the DJA, that portion of CSIRO's appeal is dismissed.

AFFIRMED-IN-PART and DISMISSED-IN-PART.