# United States Court of Appeals for the Federal Circuit

2006-1420

WALTER KIDDE PORTABLE EQUIPMENT, INC.,

Plaintiff-Appellee,

v.

UNIVERSAL SECURITY INSTRUMENTS, INC.,

Defendant-Appellant.

Albert L. Underhill, Merchant & Gould P.C., of Minneapolis, Minnesota, argued for plaintiff-appellee. With him on the brief was Keith M. Sorge.

Maurice U. Cahn, Cahn & Samuels, LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were Frederick N. Samuels and William E. Bradley.

Appealed from: United States District Court for the Middle District of North Carolina

Chief Judge N. Carlton Tilley, Jr.

# United States Court of Appeals for the Federal Circuit

2006-1420

WALTER KIDDE PORTABLE EQUIPMENT, INC.,

Plaintiff-Appellee,

v.

UNIVERSAL SECURITY INSTRUMENTS, INC.,

Defendant-Appellant.

_____

DECIDED:  March 2, 2007

_____

Before GAJARSA, MOORE, and JORDAN,[*] Circuit Judges.

JORDAN, Circuit Judge.

Defendant-appellant Universal Security Instruments, Inc. ("USI") appeals from a March 31, 2006 order of the United States District Court for the Middle District of North Carolina, Docket No. 1:03-CV-00537-NCT, granting the motion of plaintiff-appellee Walter Kidde Portable Equipment, Inc. ("Kidde") for voluntary dismissal without prejudice of an action Kidde had filed against USI.  Although we find that the district court erred as a matter of law when it dismissed USI's counterclaims over USI's

---

[*] Honorable Kent A. Jordan, Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

objection, and when it ruled on a motion for voluntary dismissal without first determining whether it had subject matter jurisdiction, we conclude that, under the circumstances, these errors were harmless. We also conclude that the district court did not abuse its discretion by granting dismissal of Kidde's claims without prejudice and without conditions. Therefore, we affirm.

## I. BACKGROUND

On June 11, 2003, Kidde began the tortuous procedural history of this case by filing suit against USI in the United States District Court for the Middle District of North Carolina. The suit ("Kidde I") alleged infringement of United States Patent No. 4,972,181 ("the '181 patent"), entitled "A.C. Powered Smoke Detector With Back-Up Battery Supervision Circuit." Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, USI subsequently filed a motion to dismiss for improper venue, or, alternatively, to transfer the case to the United States District Court for the District of Maryland. In its reply brief to Kidde's memorandum in opposition to that venue motion, USI asserted for the first time that Kidde did not have standing to bring the patent infringement claim at all because the records of the United States Patent & Trademark Office ("PTO") showed that a company called Management Investment & Technology Co., Ltd. ("MITCL"), not Kidde, owned the patent in suit.

On January 4, 2004, Kidde submitted a Confirmatory Assignment of the '181 patent that was executed by MITCL on October 8, 2003. That document purported to confirm a transfer of rights in the '181 patent to Kidde pursuant to a purchase agreement dated January 24, 1997 (the "Purchase Agreement"). Kidde claimed that, through the Purchase Agreement, Kidde and another company acquired a third

company, Fyrnetics, Inc., from two entities related to MITCL, Management Investment & Technology (Holdings) Limited ("MIT Holdings") and Management Investment & Technology International, Inc. ("MIT International"). According to Kidde, Fyrnetics had assigned the '181 patent to MITCL, who was the record holder, but MIT Holdings and MIT International had authority to sell and transfer ownership of the '181 patent, which they did pursuant to the Purchase Agreement. Kidde admitted it had not recorded the Purchase Agreement but maintained that it had no legal obligation to do so.

The district court denied USI's venue motion. It did not, however, address the issue of Kidde's lack of standing. During the pendency of the venue motion, USI filed a complaint against Kidde in the United States District Court for the District of Maryland, seeking a declaratory judgment of invalidity, noninfringement, and unenforceability of the '181 patent. USI argued that, because Kidde had no standing to sue on the '181 patent, the Middle District of North Carolina lacked subject matter jurisdiction over the claims in Kidde I, and therefore USI's suit should be allowed to proceed in Maryland. The District of Maryland disagreed. In its view, the earlier decision in Kidde I denying USI's venue motion was an assertion of jurisdiction by the Middle District of North Carolina, so the District of Maryland dismissed USI's complaint.

On February 6, 2004, USI filed its answer and various counterclaims in Kidde I, including assertions of noninfringement; invalidity; unenforceability for inequitable conduct; unenforceability for fraud on the patent office; a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and North Carolina statutory and common law. In its answer, USI

again pointed out that the records of the PTO showed that rights to the '181 patent belonged to MITCL, not Kidde.

On April 2, 2004, Kidde and USI submitted to the district court a discovery plan for Kidde I, pursuant to Rule 26(f) of the Federal Rules of Civil Procedure (the "Discovery Plan"). The Discovery Plan set deadlines for expert disclosures and stated that all discovery would be completed by April 15, 2005. Pursuant to that schedule, the court set a trial date of October 5, 2005.

On January 31, 2005, Kidde and USI submitted a stipulated motion requesting that the court extend the deadlines outlined in the Discovery Plan. On February 15, 2005, the court denied that motion. Notwithstanding the court's denial of the proposed scheduling change, Kidde claims that the parties mutually agreed to extend the deadlines for the exchange of expert reports to May 1, 2005, and Kidde served three expert reports on that date.[1] Kidde then filed a motion on June 8, 2005, requesting an order acknowledging that its three expert reports had been timely served and that the testimony of those experts would be admissible at trial. USI in turn requested the exclusion of those three reports as untimely.

On July 5, 2005, the court issued an order granting USI's motion to exclude the expert reports and declarations of Kidde's three expert witnesses.[2] The court

---

[1] The first expert report was in support of Kidde's motion for summary judgment for its patent infringement claims. The second was in support of Kidde's motion for summary judgment on USI's unenforceability counterclaims. The third was in support of Kidde's claims for damages.

[2] As Kidde understood it, this ruling also precluded Kidde from presenting the testimony of those three expert witnesses at trial.

concluded that the expert disclosure was untimely since any mutually agreed-upon extension of the time to file expert reports was limited by the April 15, 2005 deadline for the completion of all discovery, a court ordered deadline that the parties had no authority to alter. The court also decided that exclusion of the expert evidence was an appropriate sanction under Rule 16(f) of the Federal Rules of Civil Procedure, because the October 3, 2005 trial date was "coming perilously close." The court reasoned that, were it "to allow admission of [Kidde's] untimely expert reports, to avoid prejudice to [USI] the court would also have to grant [USI] more time to submit rebuttal expert reports." That would have necessitated either moving the trial date or putting the court "in the position of facing dispositive motions on the eve of trial," neither of which the court was willing to do.[3]

USI subsequently filed a motion in limine to exclude evidence and testimony as to the ownership and chain of title of the '181 patent. During proceedings with respect to that motion, the district court began to express serious concerns about lack of subject matter jurisdiction because of the uncertainty concerning the purported transfer of the patent to Kidde. Deciding that it was improvident to proceed without first resolving the question of Kidde's standing, the court gave the parties an opportunity to fully brief and further develop the record on that question. Part of the uncertainty surrounding the patent transfer stemmed from the question of whether the law of Hong Kong or North Carolina law governed the Purchase Agreement and, hence, the claimed passing of title to the '181 patent.

---

[3] That ruling was by a magistrate judge. Kidde asked the district judge assigned to Kidde I to reconsider the magistrate judge's decision, but the suit apparently

On November 28, 2005, Kidde, in an attempt to eliminate questions about its standing, filed a motion for voluntary dismissal without prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. It then proceeded on the same day to file a new action in the same court ("Kidde II"). In briefing on its motion for voluntary dismissal, Kidde reasoned that the Confirmatory Assignment of the '181 patent was executed before the new suit was filed and would confer standing. USI submitted a cross motion to dismiss with prejudice, or in the alternative, to dismiss without prejudice but with conditions.

On March 31, 2006, the court granted, without comment and without prejudice or conditions, Kidde's motion to dismiss. This appeal followed.

## II.    DISCUSSION

### A.    Jurisdiction Over This Appeal

Kidde argues that we do not have jurisdiction to review the dismissal of Kidde I because the district court's order is unclear with respect to the disposition of USI's counterclaims. Kidde contends that the lack of clarity it perceives in the district court's order casts into doubt whether there is a final and appealable judgment. We disagree.

To determine whether we have jurisdiction, we apply our own law, not the law of a regional circuit. H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1382 (Fed. Cir. 2002); Woodard v. Sage Prods., Inc., 818 F.2d 841, 844 (Fed. Cir. 1987) (en banc). Section 1295(a)(1) of title 28 confers jurisdiction on this Court to hear appeals "from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title . . . ." That means we have

was dismissed before the district judge ruled.

jurisdiction over, inter alia, patent cases when a district court has disposed of the entire case. Enercon Indus. Corp. v. Pillar Corp., 105 F.3d 1437, 1439 (Fed. Cir. 1997); see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978) ("Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting Catlin v. United States, 324 U.S. 229, 233 (1945))). In limited circumstances, we may also entertain an appeal from an order deciding less than the entire case, such as a claim subject to judgment under Rule 54(b) of the Federal Rules of Civil Procedure, or an interlocutory order certified by a district court pursuant to 28 U.S.C. § 1292(b). Enercon Indus. Corp., 105 F.3d at 1439.

In this case, the district court's order granting the motion for voluntary dismissal states that the "action" was dismissed, not simply the complaint. The term "action" encompasses the entire proceedings in the district court, signifying that the order of dismissal terminated USI's counterclaims. Cf. Local Union No. 38, Sheet Metal Workers' Int'l Ass'n AFL-CIO v. Pelella, 350 F.3d 73, 81 (2d Cir. 2003) ("The word 'action,' without more, is arguably broad enough to encompass any type of judicial proceeding, including counterclaims."); Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., 169 F. Supp. 2d 186, 193 (S.D.N.Y. 2001) (acknowledging that "the term 'suit' (or 'action') includes both claims and counterclaims); U.C.C. § 1-201(1) ("'Action' in the sense of a judicial proceeding, includes recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined."); Black's Law Dictionary 28-29 (7th ed. 1999) (defining "action" as "[a] civil

or criminal judicial proceeding").[4]   Accordingly, we construe the district's court order granting Kidde's motion for voluntary dismissal as disposing of the entire case, including USI's counterclaims, and we have jurisdiction over this appeal, pursuant to 28 U.S.C. § 1295(a)(1).

      B.      The District Court's Dismissal of <u>Kidde I</u>, Including USI's Counterclaims

            1.      Standards of Review

When addressing a procedural issue, our standard of review is the same standard as would be applied by the pertinent regional circuit, "unless the issue pertains to or is unique to patent law."  <u>Intel Corp. v. Commonwealth Scientific</u>, 455 F.3d 1364, 1369 (Fed. Cir. 2006) (quoting <u>Sulzer Textil A.G. v. Picanol N.V.</u>, 358 F.3d 1356, 1363 (Fed. Cir. 2004)).  Voluntary dismissal pursuant to Rule 41(a)(2) is not unique to patent cases, and we therefore apply the standard of review that would be applied by the United States Court of Appeals for the Fourth Circuit.  In addition to looking to Fourth Circuit precedent to determine the standard of review, we also look to that precedent to guide us in addressing the issue to be reviewed.  <u>See</u> <u>H.R. Techs.</u>, 275 F.3d at 1384 (applying law of the pertinent regional circuit to determine whether the district court properly granted plaintiff's motion to voluntarily dismiss without prejudice, and whether the court erred in dismissing the defendants' counterclaims).

---

[4]      We also note that a "district court's order dismissing both the plaintiff's complaint and the defendant's counterclaims is appealable by the defendant as a final order, even where the dismissal was without prejudice."  <u>H.R. Techs., Inc. v. Astechnologies, Inc.</u>, 275 F.3d 1278, 1383-84 (Fed. Cir. 2002).

USI argues that the district court abused its discretion by granting Kidde's motion to dismiss without prejudice or conditions. It also argues that the district court erred when it dismissed USI's counterclaims despite USI's objections. These arguments present two distinct sets of issues, requiring us to apply two different standards of review.

To clarify, Rule 41(a)(2) outlines the procedures for dismissing both a plaintiff's claims and a defendant's counterclaims. Concerning the plaintiff's claims, the rule states that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Thus, Rule 41(a)(2) gives courts discretion in deciding whether to grant a plaintiff's motion to voluntarily dismiss and whether to impose terms and conditions in granting such a motion. Accordingly, when reviewing a district court's decision granting a plaintiff's motion for voluntary dismissal without prejudice, the Fourth Circuit employs an "abuse of discretion" standard. Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). More specifically, it is within a district court's discretion to grant a plaintiff's motion for voluntary dismissal without prejudice as long as there is no impairment of the defendant's legal rights. See id. at 1275 (indicating that dismissal should be allowed when the record fails to disclose "any prejudice to the defendant . . . other than the annoyance of a second litigation upon the same subject matter") (quoting Durham v. Fla. E. Coast Ry. Co., 385 F.2d 366, 369 (5th Cir. 1967)).

With respect to a defendant's counterclaims, however, the court may not dismiss them on a plaintiff's Rule 41 motion if the defendant filed them before the dismissal motion was filed. See Fed. R. Civ. P. 41(a)(2) (stating that "[i]f a counterclaim has been

pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."); see also Gross v. Spies, 133 F.3d 914 (Table), 1998 WL 8006, at *5 (4th Cir. 1998) ("[I]f a counterclaim is pending at the time the plaintiff files its motion, the district court may not grant the plaintiff's motion unless the counterclaim can remain pending for independent adjudication.").[5] Consequently, in determining whether the district court erred by dismissing USI's counterclaims, we do not employ an abuse of discretion standard; rather, we employ a de novo standard of review to evaluate the district court's actions. Bowers v. U.S. Dept. of Justice, 930 F.2d 350, 353 (4th Cir. 1991) (stating that legal errors are subject to a de novo standard of review).

### 2. The District Court Did Not Abuse Its Discretion by Granting Voluntary Dismissal of Kidde's Claims Without Prejudice

As previously mentioned, it is within a district court's discretion to grant a plaintiff's motion for voluntary dismissal without prejudice, as long as there is no plain legal prejudice to the defendant. Davis, 819 F.2d at 1275. This is true even if "the plaintiff will gain a tactical advantage over the defendant in future litigation," id., such as a nullification of an adverse ruling in the first action. See id. (citing case law from other circuits to demonstrate the district court's broad discretion in granting voluntary dismissals, even if the plaintiff receives a tactical advantage in the second action, as

---

[5] According to the local rules of the Fourth Circuit, citation to its unpublished dispositions issued prior to January 1, 2007 is disfavored. However, if the unpublished opinion has "precedential value in relation to a material issue in a case and … there is no published opinion that would serve as well," then that opinion may be cited. 4th Cir. R. 32.1.

long as the defendant is not unfairly prejudiced). In an unpublished decision, the Fourth Circuit stated that, in determining whether the defendant would suffer prejudice from a dismissal, "a district court should consider factors such as 'the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal,' as well as 'the present stage of litigation.'" Miller v. Terramite Corp., 114 Fed. App'x 536, 539 (4th Cir. 2004) (quoting Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996)).

It is difficult for us to evaluate whether the district court abused its discretion in dismissing Kidde I, because the court did not specify the grounds on which it granted Kidde's motion. Nevertheless, after an examination of the record, we conclude that it was not an abuse of discretion to dismiss Kidde's claims without prejudice and without conditions. Cf. H.R. Techs., 275 F.3d at 1384 (holding that the district court did not abuse its discretion by dismissing the plaintiff's complaint without prejudice for lack of standing).

Kidde re-filed its complaint the same day it moved to dismiss Kidde I. Thus, the district court had before it two complaints that were the same, except that Kidde II was filed after Kidde had allegedly cured the standing problem that had been raised in Kidde I.[6] Nevertheless, USI opposed Kidde's motion to dismiss, arguing that it would be

---

[6] Assuming that Kidde lacked standing, it is highly doubtful that the "confirmatory assignment" could have cured that jurisdictional defect in Kidde I. See, e.g., Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093-94 (Fed. Cir. 1998) ("nunc pro tunc assignments are not sufficient to confer retroactive standing"); Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 779 (Fed. Cir. 1996) (documents that purported to memorialize prior oral assignment were "not sufficient to

"severely prejudiced if Kidde were allowed to simply dismiss its claim without prejudice and then start over," because it has expended significant resources and effort on Kidde I. The problem with that argument is an unstated and apparently false assumption. The implicit assumption is that USI cannot use the same factual and legal resources in Kidde II that it developed in Kidde I. The record belies that. It appears instead that the effort USI has expended in preparing for the first trial will not be wasted. USI can, and no doubt will, use in the second action the discovery and work product obtained in the first, which is a compelling reason to conclude that the district court did not abuse its discretion in dismissing Kidde I. See Davis, 819 F.2d at 1275 (noting with approval precedent reversing denial of voluntary dismissal when the defendant had shown no prejudice beyond "the annoyance of a second litigation upon the same subject matter" (quoting Durham, 385 F.2d at 369)).

USI also argues that dismissal effectively nullifies the favorable in limine rulings it received in Kidde I and that it is therefore prejudiced by the dismissal. Although we are not unsympathetic to USI's consternation at perhaps losing some evidentiary gains, the reality is, when the district court granted Kidde's motion to dismiss, the basis on which the court had earlier granted the in limine motion was undermined. Generally speaking, in limine rulings are preliminary in character because they determine the admissibility of evidence before the context of trial has actually been developed. See Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine

---

confer standing . . . retroactively"); Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F. Supp. 305, 310 (D. Del. 1995) ("Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue.") We need not decide that point here, however.

motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" (quoting Banque Hypothecaire Du Canton De Geneve v. Union Mines, 652 F. Supp. 1400, 1401 (D. Md. 1987))). When the court in Kidde I granted USI's motion to exclude Kidde's expert reports and declarations, it was concerned about adhering to the schedule leading to trial, about giving adequate time to USI to submit rebuttal reports, and about not placing the court "in the position of facing dispositive motions on the eve of trial." The in limine ruling against Kidde did not grant USI a right that was later taken away when the district court dismissed Kidde I. The in limine ruling apparently had nothing to do with substantive rights or even with the quality of the evidence. It was, rather, expressly founded on a scheduling concern. The expert evidence was excluded, according to the court, because the timing of the expert disclosure was prejudicial in light of the trial schedule that then governed the case. Because that schedule, which the district court was free to change for any number of reasons, was voided by the dismissal of the action, the foundation of the in limine ruling no longer exists. Moreover, USI may yet have the advantage of the evidentiary restrictions that were in place in Kidde I, since it remains free to argue to the district court that they should still apply in Kidde II, albeit for other reasons.[7] Thus, we conclude that the nullification of the preliminary evidentiary ruling on expert testimony did not cause legal prejudice to USI.

---

[7] We do not imply that the district court should change its earlier ruling about the expert evidence, since there may be other reasons, of which we are presently unaware, why the limitations imposed in Kidde I should remain in Kidde II. We only

Finally, USI argues that it has been prejudiced by the dismissal of Kidde I because of Kidde's delay in filing its motion to dismiss and because Kidde I had advanced too far when the district court dismissed the action. Our examination of the record reveals, however, that USI did not articulate how it has been prejudiced by the delay or why Kidde I should have been seen as having advanced too far to be dismissed. USI simply argues that Kidde delayed in filing the motion to dismiss, and that the motion came too close to when the trial was scheduled. In short, the arguments are conclusory and do not alter our view that the district court did not abuse its discretion by granting dismissal of Kidde's claims without prejudice and without conditions.

3. Although the District Court Erred by Dismissing USI's Counterclaims, That Error Was Harmless

To our knowledge, the Fourth Circuit has addressed only one case involving counterclaims pending at the time a plaintiff's action was voluntarily dismissed. Gross, 1998 WL 8006. In that unpublished decision, the Fourth Circuit closely followed Rule 41(a)(2), which expressly prohibits a district court from dismissing a defendant's counterclaims, unless those counterclaims "can remain pending for independent adjudication by the court." Fed. R. Civ. P. 41(a)(2). The Fourth Circuit noted that, in order for that prohibition to apply, "the counterclaim must have been properly filed–that is, the district court must have properly had subject matter jurisdiction over the claim." Gross, 1998 WL 8006 at *8.

observe that the scheduling problem which apparently drove the ruling in Kidde I has necessarily been altered by the passage of time.

In H.R. Technologies, we also addressed an appeal from a defendant whose counterclaims were pending when the district court granted a plaintiff's motion to voluntarily dismiss the action pursuant to Rule 41(a)(2).[8]  275 F.3d at 1385-86.  The facts in H.R. Technologies are strikingly similar to the facts in the case before us now.  The defendant in that patent infringement suit asserted counterclaims of noninfringement, unfair competition in violation of the Lanham Act, and tortious interference with business relations, and also sought attorneys fees.  Id. at 1380-81.  At the time the plaintiff filed suit, it believed it had obtained ownership of the patent through assignment.  Id. at 1381.  However, during discovery, the parties learned that the patent had not been properly assigned, and the plaintiff therefore lacked standing to bring the suit.  Id.  The district court granted the plaintiff's motion to voluntarily dismiss without prejudice, and the plaintiff promptly corrected the assignment error and re-filed its complaint against the defendant.  Id.  The defendant subsequently appealed the district court's dismissal of its counterclaims.  Id.

In that case, we held that the district court had correctly dismissed the defendant's counterclaim of noninfringement because the counterclaim was asserted against the wrong party.  Id. at 1386.  The jurisdictional defect with respect to standing, however, did not affect the remaining counterclaims of unfair competition and tortious

---

[8]      In H.R. Technologies, we indicated that we would apply the law of the United States Court of Appeals for the Sixth Circuit to determine whether the voluntary dismissal should have been granted with or without prejudice.  Id. at 1384.  Although H.R. Technologies may not be controlling on the procedural issue before us because it looked to Sixth Circuit rather than Fourth Circuit law, it is directly on point and we discern no difference in the way those two circuit courts have approached the application of Rule 41.

interference, nor the claim for attorneys fees, and we therefore vacated as legal error the district court's order dismissing those claims. Id. We acknowledged "that the practical effect of the dismissal of the counterclaims may [have been] insignificant, as they [had] all been reasserted in the new proceedings." Id. But we vacated the order with respect to those counterclaims anyway, because it was "conceivable that there may [have been] some legal significance to the timing of the filing of the counterclaims in the first action." Id.

As previously noted, USI asserted six counterclaims in Kidde I, including noninfringement; invalidity; unenforceability for inequitable conduct; unenforceability for fraud on the patent office; violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and unfair competition in violation of both the Lanham Act, 15 U.S.C. § 1125(a), and North Carolina statutory and common law. Under H.R. Technologies, and under our best understanding of how the Fourth Circuit would address this issue, it is clear that the district court erred in dismissing USI's antitrust and unfair competition counterclaims. The counterclaims were pleaded prior to Kidde's motion to dismiss; the district court apparently had subject matter jurisdiction over them;[9] and USI objected to their dismissal. Kidde could have properly defended itself against those counterclaims without having ownership of the '181 patent.

It is less clear whether the district court erred in dismissing USI's patent counterclaims. In H.R. Technologies, the court held that dismissal of the defendant's

---

[9] No one has contended that the district court lacked jurisdiction over those claims.

counterclaim of noninfringement was proper because, in light of the plaintiff's lack of standing, the counterclaim was asserted against the wrong party. 275 F.3d at 1386. Here, the district court never resolved whether Kidde owned the '181 patent, so the ambiguity about Kidde's standing and the propriety of the patent counterclaims remains. In any event, while the procedural knot presented by these facts might make for an interesting academic discussion, it is of no practical consequence here, because any error associated with dismissal of the counterclaims is harmless in this case.

Not every error warrants a remand. The statutory direction to federal courts of appeals is that, "on the hearing of any appeal . . . in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111; see also Fed. R. Civ. P. 61 (stating that no error or defect in any ruling or order is grounds for vacating or modifying a judgment or order, unless the error affects the substantial rights of the party or refusal to take such action is inconsistent with substantial justice). Although it was improper for the district court to dismiss Kidde's antitrust and unfair competition counterclaims, and, perhaps, the patent counterclaims too, the dismissal did not affect USI's substantial rights.

First, and most importantly, the district court's error did not affect USI's substantial rights because USI appears free to assert all of its counterclaims in Kidde II. During oral argument, we asked USI to identify the prejudice it would suffer if we were to uphold the district court's dismissal of the entire action. Though pressed, USI did not contend that it could not reassert its counterclaims, nor did it claim that it would be harmed by having to do so. In the briefing as well, when Kidde argued that USI had not

lost any substantial rights because USI could reassert all of its counterclaims in Kidde II, USI did not supply any specific reason to refute that contention.

Rather than confront the repeated question regarding its ability to reassert its counterclaims, USI has raised what amounts to a work product objection. In its words, the "Court does not require litigants to articulate their strategies or reasons for seeking to pursue counterclaims" in a first action rather than in a second action, because "such matters are protected work-product." Citing H.R. Technologies, USI contends that the "mere fact that it is conceivable that there may be some legal significance to the timing of the counterclaims is enough to warrant reversal." USI is mistaken. To be clear, we did not imply in H.R. Technologies that a defendant need not articulate the ramifications of a district court's dismissal of counterclaims, nor did we intend to suggest that it is this court's obligation to somehow surmise what those ramifications might be. Indeed, we would have no authority to lay down such a rule, since, again, the standard of review imposed by 28 U.S.C. § 2111 requires us to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

In H.R. Technologies, we reviewed the record and detected that there could have been "some legal significance to the timing of the filing of the counterclaims in the first action." Id. at 1386. Here, on the other hand, the record we have before us does not reveal any legal significance to the dismissal of the counterclaims in Kidde I, since they may all be asserted in Kidde II and no one has presented anything to indicate that the timing of their assertion is an issue. A party's decision to invoke work product protection cannot trump the statutory directive that requires us to disregard errors that do not affect

the substantial rights of the parties. A party must articulate how its rights are affected so that we can determine whether they are indeed rights, whether they are substantial, and whether they have been affected. Whatever else H.R. Technologies may stand for, it does not create a regime where litigants can insist that this court speculate about prejudice because a party declines to speak to the point. Because USI has not provided us with any reason for why it could not reassert its same counterclaims in Kidde II, or why it would be prejudiced by having to do so, we must conclude that USI will suffer no such harm.

Second, USI contends that, regardless of the availability of its counterclaims, the district court's dismissal is unfair because USI will lose the benefit of the favorable in limine ruling in Kidde I, limiting Kidde's expert evidence. However, the nullification of the in limine ruling did not affect USI's substantial rights because, as already observed,[10] that ruling did not grant USI a right that was later taken away; the court simply rendered a decision designed to maintain the trial schedule that was then in place. Now that the trial schedule has been voided, so has the stated basis for the in limine ruling. The passage of time has altered the landscape of this case. Even if we were to remand the case, the district court would need to create a new trial schedule, which, again, would undermine the basis of the in limine ruling. Moreover, we repeat that USI remains free to argue that the same restrictions on expert evidence should apply in Kidde II as were imposed in Kidde I, as free as it would be to argue that those

_____

[10] See supra Part II.B.2.

restrictions should remain in place under the new schedule that would govern Kidde I if we were to remand the case.

Therefore, although we agree with USI that the district court erred by dismissing USI's counterclaims, we conclude that, in the circumstances presented here, the error is harmless.

C.      The District Court's Failure to Address Standing Before It Granted Kidde's Motion to Voluntarily Dismiss Was Error, But That Error Was Harmless

We again apply the law of the Fourth Circuit in determining whether the district court erred when it failed to address standing before it granted Kidde's motion to voluntarily dismiss. Cf. Trilogy Commc'n, Inc. v. Times Fiber Commc'n, Inc., 109 F.3d 739, 744 (Fed. Cir. 1997) ("When reviewing the application of the Federal Rules of Civil Procedure, this court generally applies the law of the applicable regional circuit . . . .").

In an unpublished decision, Shortt v. Richlands Mall Associates, Inc., 922 F.2d 836 (Table), 1990 WL 207354 (4th Cir. 1990), the Fourth Circuit held that, if there is reason for a court to believe that it does not have subject matter jurisdiction, the court must address that issue before ruling on a motion for voluntary dismissal. Id. at *4. The court reasoned that, without subject matter jurisdiction, a district court could not properly engage in the balancing process and exercise of discretion required by Rule 41(a)(2). Id.

In the case before us, the record demonstrates that the district court had serious concerns about a lack of subject matter jurisdiction. The court was uncertain whether there was a valid conveyance of the patent to Kidde, and so it granted the parties an opportunity for full briefing to further develop the record for decision. Before resolving

the issue, however, the court granted Kidde's motion to voluntarily dismiss the action. In light of Shortt, we conclude that the district court erred by not first determining whether it had subject matter jurisdiction before granting Kidde's motion to voluntarily dismiss. However, we again conclude that the district court's error was harmless.

If we were to vacate the district court's order granting the voluntary dismissal and remand the action for a determination on subject matter jurisdiction in Kidde I, the parties would arrive at the same position they are now. If one assumes that the district court addressed subject matter jurisdiction on remand and concluded it did not exist,[11] the result could be a dismissal of Kidde's claims without prejudice. See, e.g., H.R. Technologies, 275 F.3d at 1384 (approving the district court's dismissal of the plaintiff's complaint without prejudice for lack of subject matter jurisdiction); Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 222 (4th Cir. 2001) (remanding a case to the district court with directions to dismiss the case without prejudice because the court found that the district court lacked subject matter jurisdiction); Russ v. United States, 129 F. Supp. 2d 905, 911 (M.D.N.C. 2001) (dismissing an action without prejudice for lack of subject matter jurisdiction). Kidde, believing it has cured its standing problem through the Confirmatory Assignment, would still press forward with the claims it has asserted in

---

[11] Based on the record the district court had before it, the court said it was "very doubtful" that Kidde had legal title of the '181 patent under North Carolina law. The court gave Kidde forty-five days to brief the subject matter jurisdiction issue, including an analysis of the Purchase Agreement under Hong Kong law, if it were applicable. After Kidde conducted further research, it stated that it did "not locate any documentation or evidence other than that previously provided to the Court." One might thus reasonably conclude that, if we were to vacate the dismissal order and remand the action to the district court, the district court would be inclined to determine that Kidde did not have legal title to the '181 patent when the case was filed and would dismiss the action for lack of jurisdiction.

<u>Kidde II</u>.  Given the obvious judicial economy to be gained by consolidating USI's counterclaims in <u>Kidde I</u>, if reinstated, with the patent claims in <u>Kidde II</u>, the parties, in all likelihood, would be in precisely the position they are at present.[12]

If, on the other hand, the court found that it did have subject matter jurisdiction over the claim, it would have discretion to voluntarily dismiss Kidde's claims on Kidde's motion, which would likely lead to consolidation with <u>Kidde II</u>, again bringing the case to the same point we are at now.  Hence, because the district court's error in granting the voluntary dismissal before it determined whether it had subject matter jurisdiction was harmless under these circumstances, we uphold the district court's order.

### III.    CONCLUSION

For the aforementioned reasons, the district court's order granting Kidde's motion for voluntary dismissal is affirmed.

### <u>AFFIRMED</u>

### IV.    COSTS

Each party shall bear its own costs for this appeal.

---

[12]    USI argues that a determination from the district court that Kidde did not have standing when it filed its action would be beneficial to USI's antitrust and unfair competition counterclaims.  USI contends that a district court ruling on Kidde's lack of standing could be submitted to the jury as an evidentiary finding in support of its allegations that Kidde sought to enforce a patent it did not own.  We find this argument unpersuasive both because court rulings are not typically issued for evidentiary effect and because it assumes the district court would allow the order to be used for such effect.  In any case, USI is obviously still free to prove that Kidde lacked ownership, if it can.

USI also argues that a determination from the district court that Kidde did not have standing when it filed <u>Kidde I</u> could limit damages USI might have to pay if USI is found liable for patent infringement.  Once again, though, there is nothing to prevent USI from submitting the same evidence it submitted in the first suit to show that Kidde did not own the patent.