**Slip Op. 10-08**

## UNITED STATES COURT OF INTERNATIONAL TRADE

---

ZHENGZHOU HARMONI SPICE CO., LTD., :
JINAN YIPIN CORPORATION, LTD., JINING
TRANS-HIGH TRADING CO., LTD., JINXIANG :
SHANYANG FREEZING STORAGE CO., LTD.,
LINSHU DADING PRIVATE AGRICULTURAL :
PRODUCTS CO., LTD., SHANGHAI LJ
INTERNATIONAL TRADING CO., LTD., and :
SUNNY IMPORT AND EXPORT LTD.,

               :

            *Plaintiffs*,

               :

       v.

               :        Court No. 06-00189

UNITED STATES,

               :

            *Defendant*,

               :

         and

               :

FRESH GARLIC PRODUCERS ASSOCIATION,
CHRISTOPHER RANCH, L.L.C., THE :
GARLIC COMPANY, VALLEY GARLIC,
and VESSEY AND COMPANY, INC., :

            *Defendant-Intervenors*. :

---

[Granting four Plaintiffs' motion for voluntary dismissal with prejudice.]

Dated: January 25, 2010

      Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Mark E. Pardo), for Plaintiffs Zhengzhou Harmoni Spice Co., Ltd., Jinan Yipin Corporation, Ltd., Jining Trans-High Trading Co., Ltd., Jinxiang Shanyang Freezing Storage Co., Ltd., Linshu Dading Private Agricultural Products Co., Ltd., Shanghai LJ International Trading Co., Ltd., and Sunny Import and Export Ltd.

      Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division U.S. Department of Justice (Richard P. Schroeder); for Defendant.

Kelley Drye & Warren LLP (Michael J. Coursey and John M. Herrmann), for Defendant-Intervenor Fresh Garlic Producers Association, and its individual members, Christopher Ranch, L.L.C., The Garlic Company, Valley Garlic, and Vessey and Company, Inc.

# OPINION

RIDGWAY, Judge:

In this action, certain Chinese producers/exporters of fresh garlic challenge the U.S. Department of Commerce's determination (the "Final Results") in the agency's tenth administrative review of the antidumping duty order covering fresh garlic from the People's Republic of China.

Although the complaint in this action was filed on behalf of seven Chinese producers/exporters, only four of the seven Plaintiffs moved for judgment on the agency record. *See* Zhengzhou Harmoni Spice Co., Ltd. v. United States, 33 CIT ____, ____ & n.2, 617 F. Supp. 2d 1281, 1285 & n.2 (2009) ("Zhengzhou Harmoni I"). In Zhenghzhou Harmoni I, the four Plaintiffs' Motion for Judgment on the Agency Record was granted in part, and this matter was remanded to Commerce for further consideration. *See generally id.*, 33 CIT ____, 617 F. Supp. 2d 1281. The remand results have not yet been filed by the agency.

Now pending before the Court is Plaintiffs' Partial Consent Motion for Voluntary Dismissal with prejudice, filed on behalf of four Plaintiffs – specifically, the three Plaintiff Chinese producers/exporters that did not join in the Motion for Judgment on the Agency Record (*i.e.*, Jining Trans-High Trading Co., Ltd., Jinxiang Shanyang Freezing Storage Co., Ltd., and Shanghai LJ International Trading Co., Ltd.), as well as Zhengzhou Harmoni Spice Co., Ltd. ("Harmoni") (one of the Plaintiff Chinese producers/exporters which was a party to that motion). *See generally* Plaintiffs' Partial Consent Motion for Voluntary Dismissal ("Pls.' Motion"); Plaintiffs' Reply to

Defendant-Intervenors' Opposition to the Partial Consent Motion for Voluntary Dismissal ("Pls.'

Reply").[1]

The Government consents to the dismissal of the four Withdrawing Plaintiffs; and the three

remaining Plaintiffs (*i.e.*, Jinan Yipin Corporation, Ltd., Linshu Dading Private Agricultural

Products Co., Ltd., and Sunny Import and Export Ltd.) apparently also do not object. *See* Pls.'

Motion at 1. However, Defendant-Intervenors – domestic producers of fresh garlic ("the Domestic

Producers") – oppose the four Plaintiffs' dismissal. *See* Defendant-Intervenors' Response in

Opposition to Plaintiffs' Partial Consent Motion for Voluntary Dismissal ("Def.-Ints.' Opposition").[2]

Jurisdiction lies under 28 U.S.C. § 1581(c) (2000). For the reasons set forth below,

Plaintiffs' Partial Consent Motion for Voluntary Dismissal with prejudice is granted.

## I. **BACKGROUND**

Commerce's final determinations in administrative reviews of antidumping duty orders may

be challenged in this court by any interested party which participated in the agency proceeding –

including foreign producers, exporters, and importers, as well as the domestic industry. *See*

*generally* 19 U.S.C. § 1516a (2000). Other interested parties that participated in the agency

---

[1]The four Plaintiffs seeking dismissal are referred to collectively herein as the "Withdrawing Plaintiffs." The pending Motion for Voluntary Dismissal notes that "[t]he remaining plaintiffs, Jinan Yipin Corporation, Ltd., Linshu Dading Private Agricultural Products Co., Ltd., and Sunny Import and Export Ltd., [intend to] proceed with this appeal." Pls.' Motion at 1 n.1.

[2]As in Zhengzhou Harmoni I, the Domestic Producers are the Fresh Garlic Producers Association and its individual members, Christopher Ranch, L.L.C., The Garlic Company, Valley Garlic, and Vessey and Company, Inc. *See* Zhengzhou Harmoni I, 33 CIT at _____ n.4, 617 F. Supp. 2d at 1286 n.4.

proceeding may intervene in such actions (whether as defendant-intervenors on the side of Commerce, to defend Commerce's final results as correct, or, less typically, as plaintiff-intervenors). *See generally* 28 U.S.C. § 2631(j)(1)(B) (2000). However, the presence or absence of other parties as intervenors in an action has no bearing on the ability of a plaintiff to obtain full relief.

Thus, for example, if a domestic producer brings an action in this court against Commerce alleging that the dumping margins calculated by the agency for various foreign producers are too low, and if the domestic producer prevails in that action, Commerce will be required to make appropriate changes increasing the dumping margins for the foreign producers at issue – without regard to whether or not the foreign producers participated as defendant-intervenors in that proceeding. By the same token, if a foreign producer/exporter brings an action against Commerce alleging that the calculated dumping margin for the company is too high, and if the foreign producer/exporter prevails in that action, Commerce will be required to make appropriate changes decreasing the foreign producer's dumping margin – without regard to whether or not any domestic producers participated as defendant-intervenors in the proceeding.

In actions such as the case at bar, the only necessary parties are the plaintiff, and the defendant (*i.e.*, Commerce). Under the statutory scheme, there is no procedure – and no need – to compel other parties to participate in litigation in order to accord a plaintiff complete relief. And an aggrieved party – whether foreign or domestic – must maintain its own action in order to ensure its right to seek judicial review and appropriate relief.

The instant action is just one of two that were filed challenging Commerce's Final Results in the tenth administrative review of the antidumping duty order on fresh garlic from China.[3] Just as the instant action was filed by seven Chinese garlic producers/exporters contending that the dumping margins calculated by Commerce in the Final Results are *too high*, so too the Domestic Producers brought their own separate action, challenging the dumping margins calculated in the Final Results as *too low*. *See generally* Complaint (filed May 10, 2006, by Domestic Producers in Court No. 06-00150). As is typical in such cases, the Domestic Producers intervened as Defendant-Intervenors in the instant action (to defend Commerce against the Plaintiff Chinese producers/exporters' claims that the dumping margins calculated by the agency were too high); and the seven Chinese garlic producers/exporters intervened as Defendant-Intervenors in the Domestic Producers' action (to defend Commerce against the Domestic Producers' claims that the calculated dumping margins were too low).

The two actions were subsequently consolidated, at the parties' request. However, the Domestic Producers voluntarily dismissed their action soon thereafter. *See* Consent Motion to Sever and Dismiss; Order (Dec. 29, 2006) (dismissing Domestic Producers' Complaint in Court No. 06-00150, and approving their continued participation as Defendant-Intervenors in the instant action). The Domestic Producers offered no reasons for dismissing their action, but stated their intent to "continue to participate . . . as Defendant-Intervenors in [the instant] action." *See* Consent Motion to Sever and Dismiss. The Domestic Producers thus voluntarily abandoned their role as Plaintiffs

---

[3]The statute provides for an annual administrative review of the accuracy of dumping margins, at the request of an interested party. 19 U.S.C. § 1675(a) (2000).

challenging the Final Results as too low, and relegated themselves to the role of Defendant-Intervenors in the sole remaining case – the instant case, commenced by the Plaintiff Chinese producers/exporters.

The Amended Scheduling Order entered at the request of all parties established deadlines for various events, including Plaintiffs' filing of a Motion for Judgment on the Agency Record. Thereafter, four of the seven Plaintiff Chinese producers/exporters filed a timely Motion for Judgment on the Agency Record, briefing a total of seven issues as to which they assert that Commerce erred in its Final Determination. Plaintiffs' counsel offered no explanation as to the three Plaintiffs that did not join in the Motion for Judgment on the Agency Record. Similarly, the Government and the Domestic Producers made no mention of the fact in their briefs. But the Court's opinion took note. *See* Zhengzhou Harmoni I, 33 CIT at \_\_\_\_ & n.2, 617 F. Supp. 2d at 1285 & n.2.[4]

Zhengzhou Harmoni I granted the four Plaintiffs' Motion for Judgment on the Agency Record as to five of their seven claims, and remanded this matter to Commerce for further consideration. *See* Zhengzhou Harmoni I, 33 CIT at \_\_\_\_, 617 F. Supp. 2d at 1334.[5] In the course

---

[4]In Zhengzhou Harmoni I, the four movant Plaintiffs were collectively referred to as "the Chinese Producers." Other Chinese garlic producers and exporters involved in Commerce's administrative review – including the three Plaintiffs that did not join in the Motion for Judgment on the Agency Record – were generally referred to simply as "respondents." *See* Zhengzhou Harmoni I, 33 CIT at \_\_\_\_ n.2, 617 F. Supp. 2d at 1285 n.2.

[5]Specifically, the four Plaintiff Chinese producers/exporters prevailed on their challenges to the surrogate values used in Commerce's calculations for various inputs used in the production of fresh garlic, including the labor/wage rate, the cost of ocean freight, the cost of packing cartons, the cost of plastic jars and lids, and the cost of raw garlic bulb. *See* Zhengzhou Harmoni I, 33 CIT at \_\_\_\_, 617 F. Supp. 2d at 1334.

of the agency's ongoing remand proceeding, the administrative record has been supplemented with additional factual information concerning at least some of the five issues on which the four Plaintiff Chinese producers/exporters prevailed in Zhenghzhou Harmoni I, including the issue of the valuation of raw garlic bulb.

The new data placed on the record concerning the valuation of raw garlic bulb reportedly include information drawn from the Azadpur Produce Marketing Committee's "Market Information Bulletin," which, according to the Domestic Producers, "reflect[s] a surrogate value that is greater than the value [that Commerce] relied upon" in its Final Results. *See* Def.-Ints.' Opposition at 3. The Domestic Producers suggest that "if [Commerce] ultimately relies on this additional information to value garlic bulbs in its [remand results], there is a possibility that the antidumping margins calculated for the Plaintiffs will be higher than the margins calculated by [Commerce] in its final results." *See id*.

Thus, although the remand results have not yet even been filed,[6] much less reviewed by the Court, the Domestic Producers hypothesize that the remand results will rely on garlic bulb values drawn from the Azadpur Produce Marketing Committee bulletin, and, further, speculate that the four Withdrawing Plaintiffs – Harmoni (one of the four Plaintiffs that joined in the Motion for Judgment on the Agency Record), as well as the three Plaintiffs that did not join in that motion – are seeking

_____

The four Plaintiffs' Motion for Judgment on the Agency Record was denied as to both their challenge to Commerce's use of an intermediate input methodology in valuing raw garlic bulb, and their claim that Commerce improperly included provident fund and gratuity expenses as part of manufacturing overhead. *Id*.

[6]At the request of the parties, the deadline for Commerce's filing of the remand results was suspended pending a ruling on the instant motion.

dismissal in order to avoid any increased dumping margins that might result from an increase in Commerce's valuation of raw garlic bulb. *See* Def.-Ints.' Opposition at 6, 8.

As noted above, the Government consents to the dismissal with prejudice of the four Withdrawing Plaintiffs; and the three remaining Plaintiffs (*i.e.*, Jinan Yipin Corporation, Ltd., Linshu Dading Private Agricultural Products Co., Ltd., and Sunny Import and Export Ltd.) apparently also do not object. *See* Pls.' Motion at 1. Only the Domestic Producers oppose the requested dismissal.

## II. ANALYSIS

The present motion is governed by USCIT Rule 41(a)(2), which permits a plaintiff to voluntarily dismiss its action, even late in the proceeding and even absent the consent of all parties, "upon order of the court, and upon such terms and conditions as the court deems proper." *See* USCIT R. 41(a)(2); 8 Moore's Federal Practice 3d § 41.40[1] (2009); 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 451-56, 498-502 (2008); *see also*, *e.g.*, Garber v. Chicago Mercantile Exchange, 570 F.3d 1361, 1365 (Fed. Cir. 2009) (explaining that "Rule 41(a)(2) contemplates dismissal of [an] action by the plaintiff at a latter stage of the proceedings without agreement from all parties involved").[7] The purpose of the rule is "to permit the plaintiff to dismiss

---

[7]USCIT Rule 41(a)(2) parallels Rule 41(a)(2) of the Federal Rules of Civil Procedure. The language of both rules has been recently amended, though the changes have no bearing on this case. At the time of the filing of the pending motion, USCIT Rule 41(a)(2) specified that:

Except as provided in [USCIT Rule 41(a)(1)], an action shall not be dismissed by the plaintiff unless upon order of the court, and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the

[its] action while avoiding prejudice to the defendant through the imposition of curative conditions."

8 Moore's Federal Practice 3d § 41.40[1]; *see also* 9 Wright & Miller, Federal Practice and

Procedure: Civil 3d § 2364 at 472-74 (same); Tomoegawa (U.S.A.), Inc. v. United States, 15 CIT

182, 190, 763 F. Supp. 614, 620-21 (1991) (same).

Thus, as the Withdrawing Plaintiffs correctly observe, a motion for voluntary dismissal under

Rule 41(a)(2) is committed to the sound discretion of the trial court, and should be granted absent

a showing of "clear legal prejudice" to an opposing party. *See* Pls.' Motion at 3 (*citing*, *inter alia*,

Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997)); 9 Wright & Miller, Federal Practice and

Procedure: Civil 3d § 2364 at 474-76 (stating that "dismissal should be allowed unless the defendant

will suffer some plain legal prejudice"); *id*. § 2364 at 458-65 (explaining that "[t]he grant or denial

of a dismissal on motion under Rule 42(a)(2) is within the sound discretion of the trial court," and

that trial court's ruling "is reviewable by the court of appeals only for abuse of that discretion"); 8

Moore's Federal Practice 3d § 41.40[2] (stating that motion for voluntary dismissal "is addressed

to the sound discretion of the [trial] court"); *id*. § 41.40[5][a] (stating that even motion for dismissal

*without* prejudice should be granted absent "plain legal prejudice" to defendant); *id*. § 41.40[7][b][i]

---

service upon the defendant of the plaintiff's motion to dismiss, the action shall not
be dismissed against the defendant's objection unless the counterclaim can remain
pending for independent adjudication by the court. Unless otherwise specified in the
order, a dismissal under this paragraph is without prejudice.

USCIT Rule 41(a)(2); *compare* Fed.R.Civ.P. 41(a)(2). USCIT Rule 41(a)(1) – which has no
application here – governs voluntary dismissals early in a proceeding (before service of an answer
or dispositive motion, whichever occurs first), as well as later voluntary dismissals to which all
parties consent. *See generally* 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2363
(summarizing operation of Fed.R.Civ.P. 41(a)(1)).

(stating that "prejudice to the defendant is the primary consideration" in ruling on motion for voluntary dismissal); *id*. § 41.40[11][a] (discussing standard of review).[8]

Courts across the country have articulated varying formulations of "legal prejudice," enumerating factors to be evaluated in determining whether a motion for voluntary dismissal should be granted (and, if so, under what terms and conditions, if any). The Domestic Producers point to the factors recited by the Tenth Circuit in Ohlander – "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." *See* Def.-Ints.' Opposition at 4-5 (*quoting* Ohlander, 114 F.3d at 1537) (internal quotation marks omitted). The Domestic Producers also quote Hamm v. Rhone-Poulenc, in which the Eighth Circuit listed "factors such as whether the party has presented a proper explanation for its desire to dismiss . . . ; whether a dismissal would result in a waste of judicial time and effort . . . ; and whether a dismissal will prejudice the defendants. . . . " *See* Def.-Ints.' Opposition at 5 (*quoting* Hamm v. Rhone-Poulenc

---

[8]*See also*, *e.g.*, Walter Kidde Portable Equip., Inc. v. Universal Security Instruments , Inc., 479 F.3d 1330, 1337 (Fed. Cir. 2007) (stating that decision on motion for voluntary dismissal is "within a district court's discretion . . . as long as there is no plain legal prejudice to the defendant") (applying law of 4th Circuit); Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1034 (Fed. Cir. 2006) (noting that 8th Circuit has held that "voluntary dismissals under Fed.R.Civ.P. 41(a) should be granted only if no other party will be prejudiced"); H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1384 (Fed. Cir. 2002) (stating that, "[u]nder Sixth Circuit law, the decision whether to dismiss with or without prejudice is committed to the sound discretion of the district court."); United States v. T.J. Manalo, Inc., 33 CIT ____, ____, 2009 WL 3287941, at * 4 (2009) (noting that decision on motion for voluntary dismissal is "committed to the [trial] court's sound discretion," and that "'[c]lear legal prejudice to the defendant is the foremost factor' to be considered") (citation omitted); Tomoegawa, 15 CIT at 190, 763 F. Supp. at 620-21 (same).

Rorer Pharms. Inc., 187 F.3d 941, 950 (8th Cir. 1999)).[9]

Whatever may be the factors to be applied in a given jurisdiction, the primary focus of analysis remains "whether there is prejudice to some legal interest, claim, or argument of the defendant, such as the loss of a federal forum, or the inability to conduct meaningful discovery. Legal prejudice is shown when actual legal rights are threatened or when monetary or other burdens

---

[9]*See generally* 8 Moore's Federal Practice 3d §§ 41.40[6]-[7] (summarizing criteria most commonly considered in evaluating motions for voluntary dismissal, and surveying factors as articulated by various circuits); 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 504-513 (surveying factors as articulated by various circuits); *see also*, *e.g.*, Walter Kidde Portable Equip., 479 F.3d at 1337 (summarizing factors to be considered in determining potential prejudice to defendant, under law of 4th Circuit); Highway Equip. Co. v. FECO, 469 F.3d at 1034 (summarizing factors to be considered in deciding whether voluntary dismissal should be with prejudice or without prejudice, under law of 8th Circuit).

As the Ohlander court emphasized, such lists of factors are not exhaustive, and each individual case must be evaluated on its own facts. *See* Ohlander, 114 F.3d at 1537. Further, "[e]ach factor need not be resolved in favor of the moving party for dismissal to be appropriate, nor need each factor be resolved in favor of the opposing party for denial of the motion to be proper." *Id.*; *see also* 8 Moore's Federal Practice 3d § 41.40[6] (stating that "the lists [of factors] formulated [by the courts] have been non-exclusive and are meant to serve merely as guidelines for the [trial] court"). Moreover, the "traditional factors to be considered . . . should not necessarily override factors that are 'unique to the context of [the] case'." County of Santa Fe v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1048 n.14 (10th Cir. 2002) (*quoting* Ohlander, 114 F.3d at 1537).

As an aside, a close reading of the caselaw reveals some disarray. Factors are sometimes identified as the criteria to be weighed in deciding whether or not to grant a motion for voluntary dismissal (and, if so, under what terms and conditions, if any). Other times the same factors are identified as the criteria to be considered in evaluating the potential for legal prejudice to a defendant which would result from granting voluntary dismissal. And still other times, the same factors are listed as the criteria to be considered in determining whether voluntary dismissal should be granted *with* prejudice or *without* prejudice. *See generally* 8 Moore's Federal Practice § 41.40[10][d][vii] (observing that "[t]he factors considered in determining whether the dismissal should be with [or without] prejudice are essentially the same as those considered in determining whether the dismissal should be permitted at all.").

appear to be extreme or unreasonable." 8 Moore's Federal Practice 3d § 41.40[6] (footnote omitted); *see also id*. § 41.40[7][b][i] (emphasizing that "prejudice to the defendant is the primary consideration on a Rule 41(a)(2) motion"); Walter Kidde Portable Equip. Inc. v. Universal Security Instruments , Inc., 479 F.3d 1330, 1336 (Fed. Cir. 2007) (explaining that decision on motion for voluntary dismissal is "within a district court's discretion . . . *as long as there is no plain legal prejudice to the defendant*") (emphasis added).

In weighing the relevant factors and analyzing the extent of any cognizable "legal prejudice" to a defendant, courts must consider whether any potential harm to the defendant can be avoided by imposing terms and conditions on the dismissal. *See* 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 514; *see also* 8 Moore's Federal Practice 3d § 41.40[7][a] (stating that "[r]egardless of the stage of the litigation, a motion for a voluntary dismissal should be granted when the prejudice to defendant may be cured through the imposition of terms or conditions," such as an award of costs).[10]

---

[10]The "terms and conditions" most commonly imposed concern plaintiff's payment of defendant's costs of litigation. *See generally* 8 Moore's Federal Practice 3d § 41.40[10][d][i]-[iii] (surveying caselaw on court's discretion to condition voluntary dismissal on plaintiff's payment of defendant's costs of litigation); 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2366 at 526-27 (stating that it has become "commonplace" to require plaintiff to pay defendant's costs as condition of voluntary dismissal).

However, an award of litigation costs generally is limited to expenses incurred in preparing work product that would not be useful in subsequent litigation of the same claim. *See* 8 Moore's Federal Practice 3d § 41.40[10][d][ii]-[iii]; 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2366 at 532. Thus, when a voluntary dismissal is with prejudice, it is generally inappropriate to condition dismissal on plaintiff's payment of defendant's costs. *See generally* 8 Moore's Federal Practice 3d § 41.40[10][d][viii] (noting that "[a]n award of costs and attorney's fees should be denied if the voluntary dismissal is with prejudice, because the defendant is not confronted with the

Moreover, in weighing the relevant factors and analyzing the extent of any legal prejudice to the defendant, the courts have generally drawn a bright line distinction between dismissal with prejudice, and dismissal without prejudice. As the Court of Appeals for the Federal Circuit has underscored, dismissal *without* prejudice "constitutes a final termination of the first action, [but] does not bar a second suit," while "[a] dismissal *with* prejudice bars a subsequent action between the same parties or their privies on the same claim." *See* H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1384 (Fed. Cir. 2002) (emphasis added); *see also* 8 Moore's Federal Practice 3d § 41.40[9][f]. There is therefore a much greater risk of legal prejudice when dismissal is without prejudice, given the threat of future litigation.[11] In contrast, when dismissal is with prejudice, "there

future risk of litigation"); 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2366 at 538-40 (stating, *inter alia*, that "[m]any courts have held that if the dismissal is with prejudice, the court lacks the power to require the payment of attorney's fees, unless the case is of a kind in which attorney's fees otherwise might be ordered after termination on the merits." (footnote omitted)).

[11]"[T]he mere prospect of a second lawsuit following a voluntary dismissal without prejudice does not constitute plain legal prejudice" warranting denial of the motion to dismiss. 8 Moore's Federal Practice 3d § 41.40[5][c]; *see also* 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 474-76. Moreover, the fact that a plaintiff may obtain some "tactical advantage" is not grounds for denying a motion for voluntary dismissal, even when dismissal is without prejudice. *See* 8 Moore's Federal Practice 3d § 41.40[5][d]; 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 477-85; *see also* Walter Kidde Portable Equip., 479 F.3d at 1337 (noting that trial court has discretion to grant voluntary dismissal without prejudice, as long as there is no "plain legal prejudice" to defendant, even if plaintiff "'will gain a tactical advantage over the defendant in future litigation,' . . . such as a nullification of an adverse ruling in the first action") (citation omitted).

However, under certain circumstances, a plaintiff's reasons for seeking dismissal without prejudice in order to bring a second suit may warrant denial of the plaintiff's motion. For example, some courts have held that dismissal without prejudice may be denied where the substantive law which would be applied in the prospective new forum would prejudice the defendant. *See* 8 Moore's Federal Practice 3d § 41.40[7][b][ii]; 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 494. Similarly, "[s]ome courts have found that the loss of [a] statute of limitations defense constitutes plain legal defense," although other courts have held to the contrary. *See* 8 Moore's

is generally no potential for harm to the defendant." *See* <u>United States v. T.J. Manalo, Inc.</u>, 33 CIT ____, ____, 2009 WL 3287941, at * 4 (2009) (*citing* 8 Moore's Federal Practice 3d § 41.40[3] (stating that "[i]n most cases, a court will grant a plaintiff's motion to dismiss with prejudice," because "the defendant will have obtained a judgment on the merits that vindicates his rights and precludes any future suit by the plaintiff.") (internal quotation marks and citation omitted)). Indeed, because dismissal with prejudice constitutes a complete adjudication of the action at issue, some courts have gone so far as to hold that a motion for voluntary dismissal with prejudice must be granted. *See generally* 8 Moore's Federal Practice 3d § 41.40[10][d][vii] (stating that, "[a]s a general rule, the court lacks discretion to deny the motion if the plaintiff requests that the dismissal be with prejudice").[12]

_____

Federal Practice 3d § 41.40[7][b][viii]; *see also* 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 488-89. For an overview of relevant caselaw, *see generally* 8 Moore's Federal Practice 3d §§ 41.40[5][b], 41.40[6], 41.40[7][a]-[e]; 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 474-513.

[12]*See also* 8 Moore's Federal Practice 3d § 41.40[3] (explaining that "[s]ome courts have held that the court lacks discretion to deny a motion under Rule 41(a)(2) when the plaintiff requests that the dismissal be made with prejudice, because the defendant receives all the relief that could have been obtained after a full trial and is protected from future litigation by the doctrine of *res judicata*."); 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 551 (stating that "[i]f the plaintiff moves for an order . . . for voluntary dismissal specifically requesting that the dismissal be with prejudice, it has been held that the district court must grant that request"); *id*. § 2364 at 469-70 (explaining that, while "[m]any courts have taken the sensible position that dismissal without prejudice generally should be granted . . . if no prejudicial effects would result for the opposing party," the courts have gone even further where dismissal is *with* prejudice; since a voluntary dismissal with prejudice "is a complete adjudication of the claims and a bar to a further action on them . . . , it has been held that [the trial court] has no discretion to refuse such a dismissal and cannot force an unwilling plaintiff to go to trial"). *But see*, *e.g.*, <u>County of Santa Fe v. Pub. Serv. Co. of N.M.</u>, 311 F.3d at 1048-49 (recognizing that "[i]n most cases, the normal analysis will result in the district court granting the plaintiff's motion to dismiss with prejudice," but declining to adopt *per se* "blanket" rule requiring that motions for voluntary dismissal with prejudice be

In the present case, the four Withdrawing Plaintiffs seek dismissal *with* prejudice, and correctly observe that "there should be no concern regarding legal prejudice to the defendant since Defendant [*i.e.*, the Government] has consented to this motion." *See* Pls.' Motion at 3. However, any cognizable legal prejudice to the Defendant Intervenors – the Domestic Producers – must also be considered. *See* ITV Direct, Inc. v.Healthy Solutions, LLC, 445 F.3d 66, 70 (1st Cir. 2006) (stating that "a third-party intervenor's interests should also be considered" in determining whether to grant voluntary dismissal); *see e.g.*, County of Santa Fe v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1047-50 (10th Cir. 2002) (considering interests of and potential prejudice to intervenors); *cf*. 8 Moore's Federal Practice 3d § 41.40[3] (noting that, "when the dismissal with prejudice does not dispose of the entire litigation, the court may inquire as to whether the remaining parties would be prejudiced by dismissal with prejudice").

The Domestic Producers couch their arguments in the language of the factors that courts have used in evaluating whether to grant motions for voluntary dismissal (and, if so, whether the dismissal should be with or without prejudice, and whether it should be subject to any terms and conditions).[13] Distilled to their essence, however, the Domestic Producers' various arguments have

granted in all cases; holding that trial court erred in granting plaintiff's motion for voluntary dismissal with prejudice "where the relief sought by the intervenors is the prosecution of a cause of action by the very plaintiff seeking dismissal with prejudice of that cause of action") (discussed in 8 Moore's Federal Practice 3d § 41.40[3]).

[13]*See* Def.-Ints.' Opposition at 5, 6, 8 (asserting that the Withdrawing Plaintiffs have failed to offer an explanation for seeking voluntary dismissal); *id*. at 7 (arguing that "the present state of litigation" weighs against voluntary dismissal of the three Withdrawing Plaintiffs that did not join in the Motion for Judgment on the Agency Record); *id*. at 7 (asserting that "excessive delay and lack of diligence" on the part of the three Withdrawing Plaintiffs that did not join in the Motion for Judgment on the Agency Record counsels against their voluntary dismissal).

a single basic thrust: that the four Withdrawing Plaintiffs are seeking to avoid potential increases in the dumping margins calculated in Commerce's Final Results, and that the requested dismissals "would prejudice [the Domestic Producers'] interest in ensuring that the appropriate amount of antidumping duties are assessed" on the shipments of fresh garlic at issue in this action. *See* Def.-Ints.' Opposition at 5-6, 8-9.

As detailed below, the analysis as to Harmoni and the analysis as to the three other Plaintiffs seeking dismissal differ to some degree. But the bottom line is the same. Any potential harm associated with the requested voluntary dismissals is fundamentally a consequence of the Domestic Producers' decision to dismiss their own action challenging the dumping margins calculated in Commerce's Final Results as *too low*. Having dismissed their own action (which was the proper vehicle under the statutory scheme for the claims that they are now seeking to press here), the Domestic Producers cannot hijack this action and force these Plaintiffs to maintain it for the sole purpose of serving the Domestic Producers' ends.

In short, the Domestic Producers here have failed to show that they will suffer any cognizable legal prejudice as a result of the requested voluntary dismissals with prejudice – either as to the three Chinese producers/exporters that did not join in the Motion for Judgment on the Agency Record, or as to Harmoni, which was a party to that motion.

Each of the Domestic Producers' arguments is analyzed below, in turn.

The Domestic Producers first assert that the four Withdrawing Plaintiffs "have failed to offer any rationale whatsoever for . . . seeking a voluntary dismissal from this action." *See* Def.-Ints.' Opposition at 8; *see also id*. at 5, 6. No doubt the Withdrawing Plaintiffs could have been more

direct and forthcoming.[14]  But that fact causes no prejudice to the Domestic Producers in this case.

Some courts have gone so far as to hold that "the plaintiff's motive for seeking a voluntary dismissal is irrelevant."  *See*, *e.g.*, 8 Moore's Federal Practice 3d § 41.40[7][b][i].  Moreover, as a practical matter, a clear statement of the plaintiff's reasons for seeking dismissal is most important when the plaintiff's motion seeks voluntary dismissal without prejudice, because the court and any opposing parties need to be able to evaluate the circumstances surrounding any potential future litigation in order to determine whether dismissal without prejudice should be granted.  *See* n.11, *supra* (explaining that, in certain circumstances, a plaintiff's reasons for seeking dismissal without prejudice in order to bring a second suit may warrant denial of plaintiff's motion).  In the instant case, however, the Withdrawing Plaintiffs seek dismissal with prejudice – so there is no prospect of future litigation.  The Domestic Producers here simply have not identified any particular potential prejudice to them associated with the Withdrawing Plaintiffs' failure to clearly spell out their reasons for seeking voluntary dismissal.  Under these circumstances, the Withdrawing Plaintiffs' coyness does not suffice as grounds to deny the pending motion.

---

[14]As grounds for their motion for voluntary dismissal, the Withdrawing Plaintiffs state that "granting the motion . . . will promote efficient use of agency resources by significantly reducing Commerce's burden in its remand," and "will also promote judicial economy in general," by "streamlin[ing] this appeal and prevent[ing] the possibility of future inefficiencies."  *See* Pls.' Motion at 4.  The Withdrawing Plaintiffs further explain that "the costs and efforts involved with continued participation in this appeal now outweigh any potential benefit."  *See* Pls.' Reply at 4.  For  reasons discussed below, however, that rationale really holds water only as to Harmoni.  *See* section II.B, *infra*.  As detailed there, whatever "costs and efforts" the other three Withdrawing Plaintiffs have expended or would expend in the future but for voluntary dismissal, the Withdrawing Plaintiffs have no "potential benefit" to gain from continued participation in this action, because – by failing to file a timely Motion for Judgment on the Agency Record – the three Withdrawing Plaintiffs became bound by the dumping margins calculated in Commerce's Final Results.  *Id*.

The Domestic Producers contend that the true motivation behind the pending motion is a desire on the part of the four Withdrawing Plaintiffs to avoid the effects on their dumping margins of a potential increase in Commerce's valuation of raw garlic bulb. *See* Def.-Ints.' Opposition at 6, 8. Even assuming that the Domestic Producers are correct in their suspicions about the Withdrawing Plaintiffs' motivations,[15] the Domestic Producers nevertheless have failed to demonstrate the type of cognizable legal prejudice required to defeat the Withdrawing Plaintiffs' motion and compel them to continue to maintain the instant action.

## A.  Harmoni

The Domestic Producers underscore their interests in "ensuring that the appropriate amount of antidumping duties are assessed on all of the various shipments of fresh garlic at issue in this action," and point to precedent recognizing that domestic producers "derive a direct competitive benefit from the proper administration and enforcement of the antidumping laws, and more specifically, the proper assessment of antidumping duties [on merchandise subject to an antidumping duty order]." *See* Def.-Ints.' Opposition at 5 (*quoting* SSAB v. U.S. Bureau of Customs & Border Protection, 32 CIT ____, ____, 571 F. Supp. 2d. 1347, 1352 (2008) (internal quotation marks omitted) (alteration in original); *citing* Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983) (acknowledging, in context of application for preliminary injunction, that "[the domestic interested party] has a strong, continuing, commercial-competitive stake in assuring that its

---

[15]In their reply, the Withdrawing Plaintiffs intimate that – as the Domestic Producers assert – the possibility of an increase in the Withdrawing Plaintiffs' dumping margins may have "factored into [the] Withdrawing Plaintiffs' decision" to file the pending motion. *See* Pls.' Reply at 4-5.

competing importers will not escape the monetary sanctions deliberately imposed by Congress. Defeat of that strong congressionally recognized competitive interest and the abrogation of effective judicial review are sufficient irreparable injury here.")).

Arguing that Harmoni is seeking dismissal in an "attempt[  ] to avoid the possibility that [Commerce] will calculate an above *de minimis* . . . margin for it in the [remand results]," and emphasizing that Harmoni was a party to the Motion for Judgment on the Agency Record filed in this action, the Domestic Producers contend that, "[h]aving invoked this Court's jurisdiction to challenge the final results of the 10[th] administrative review, it would be unfair and prejudicial to [the Domestic Producers] to grant Plaintiffs' Motion as to Harmoni." *See* Def.-Ints.' Opposition at 6-7.[16] Contrary to the Domestic Producers' implication, however, there is no basis in the law for the notion that – merely because Harmoni invoked the Court's jurisdiction and joined in the Motion for Judgment on the Agency Record – Harmoni is somehow, by definition, precluded from seeking voluntary dismissal at this time.

Indeed, by its very nature, Rule 41(a)(2) permits a plaintiff to voluntarily dismiss an action after a court's jurisdiction has been invoked and before final judgment is entered, provided that the dismissal causes no legal prejudice to an opposing party that cannot be remedied by the court's imposition of curative terms and conditions. *See generally* 8 Moore's Federal Practice 3d § 41.40[1] (purpose of Rule 41(a)(2) is "to permit the plaintiff to dismiss the action [even later in a proceeding,

---

[16]Indeed, the Domestic Producers question why Harmoni was a plaintiff in this action in the first place, given that Harmoni was assigned a *de minimis* margin (0.27%) in Commerce's Final Results. *See* Def.-Ints.' Opposition at 3, 6.

and absent consent of all parties] while avoiding prejudice to the defendant through the imposition

of curative conditions"); 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2364 at 456,

472-76 (explaining that voluntary dismissals under Rule 41(a)(2) may be subject to terms and

conditions imposed to remedy any "plain legal prejudice" that defendant would otherwise suffer);

*see*, *e.g.*, Garber v. Chicago Mercantile Exchange, 570 F.3d at 1365 (explaining that "Rule 41(a)(2)

contemplates dismissal of [an] action by the plaintiff *at a latter stage of the proceedings* without

agreement from all parties involved") (emphasis added).[17]   As discussed herein, the Domestic

Producers simply cannot demonstrate the requisite legal prejudice in this case.

_____

[17]Thus, for example, contrary to the Domestic Producers' implications, "the mere filing of a . . . [dispositive] motion is not, without more, a basis to deny a voluntary dismissal," even when that dismissal is without prejudice.  *See* 8 Moore's Federal Practice 3d § 41.40[5][b].

Further, "the advanced stage of the litigation" alone never mandates denial of a motion for voluntary dismissal.  8 Moore's Federal Practice 3d § 41.40[7][a]; *see*, *e.g.*, Kern v. TXO Prod. Corp., 738 F.2d 968, 970-71 (8th Cir. 1984) (affirming grant of motion for voluntary dismissal without prejudice, even though plaintiff had presented four of five witnesses at trial, and trial judge had advised plaintiff in conference that directed verdict in favor of defendant should be expected) (cited in 8 Moore's Federal Practice 3d § 41.40[7][a]).  In fact, a motion for voluntary dismissal should be granted – without regard to the stage of the litigation – whenever the prejudice to the defendant (if any) can be cured through the imposition of terms or conditions.  *Id*. § 41.40[7][a].

The prejudice most commonly associated with a late-stage motion for voluntary dismissal are the defendant's litigation costs.  Such a prejudice can be cured by conditioning dismissal on the plaintiff's payment of appropriate litigation costs, however, and thus cannot justify denial of a motion for voluntary dismissal.  In any event, as the Withdrawing Plaintiffs observe, "every issue that has been raised and briefed in this appeal affects the remaining plaintiffs" – Jinan Yipin Corporation, Ltd., Linshu Dading Private Agricultural Products Co., Ltd., and Sunny Import and Export Ltd. – "and would have been raised in the complaint and briefed even in the absence of [the] Withdrawing Plaintiffs' involvement" in the case.  *See* Pls.' Motion at 3.  The Domestic Producers therefore cannot claim that an earlier motion for voluntary dismissal would have reduced their litigation costs here.  Nor do the Domestic Producers identify any other potential prejudice related specifically to the timing of the pending motion.

The Domestic Producers' assertion that Harmoni is improperly seeking dismissal to avoid an adverse determination is equally unavailing. Although the Domestic Producers did not brief the applicable law, it is axiomatic that "[a] motion for voluntary dismissal should generally be denied when the purpose is to avoid an adverse determination on the merits of the action." *See* 8 Moore's Federal Practice 3d § 41.40[7][b][v] (and authorities cited there). However, to render dismissal inappropriate, that adverse result must be "expected." *See*, *e.g.*, Radiant Tech. Corp. v. Electrovert USA Corp., 122 F.R.D. 201, 203-204 (N.D. Tex. 1988) ("[O]utright dismissal should be refused . . . when a plaintiff seeks to circumvent an *expected* adverse result." (emphasis added)); Kern v. TXO Prod. Corp., 738 F.2d 968, 970-71 (8th Cir. 1984) (affirming grant of motion for voluntary dismissal without prejudice, even though – near end of presentation of plaintiff's case – trial judge advised plaintiff in conference that directed verdict in favor of defendant should be expected; reasoning that, "[a]lthough it was likely that that motion [for directed verdict in favor of defendant] would have been granted, *we cannot say that it was certain*.") (emphasis added).[18]

---

[18]*See also* DuToit v. Strategic Minerals Corp., 136 F.R.D. 82, 85-86 (D. Del. 1991) ("The case law suggests that a plaintiff's purported desire to avoid a potential adverse determination does not warrant denial of voluntary dismissal unless the plaintiff's motion follows an *indication by the court* that it intends to rule against the plaintiff on [some] pending motion." (emphasis added)).

Further, a close reading of well-reasoned decisions on point reveals that most cases where dismissal is denied because the plaintiff seeks to avoid an adverse result involve motions for dismissal *without* prejudice, and reflect a preference for a court ruling on some pending motion rather than granting the plaintiff a "do-over" and leaving the defendant open to repeat litigation on issues that have already been (at least partially) litigated. Thus, for example, the Tenth Circuit explained: "We agree with the district court that a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim *without prejudice*." Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996) (emphasis added) (affirming trial court's denial of motion to dismiss without prejudice); *see also*, *e.g.*, Minnesota Mining & Mfg. Co. v. Barr Labs.,

In the instant case, it cannot be said with any reasonable degree of certainty that a result adverse to Harmoni is expected.[19] The sole decision issued to date in this litigation squarely *favored* Harmoni and the other Plaintiffs. Zhengzhou Harmoni I ruled overwhelmingly in favor of Plaintiffs (on five out of seven issues, including the issue of the valuation of raw garlic bulb – the single issue on which the Domestic Producers here focus). *See* Zhengzhou Harmoni I, 33 CIT at ____, 617 F. Supp. 2d at 1334.

To the extent that the Domestic Producers now postulate that Commerce's forthcoming remand results may reflect an increase in the value of raw garlic bulb over the value used in calculating the Final Results, it suffices to reiterate that the remand results have not yet issued. When they are released, the remand results may or may not reflect an increase in the value of raw garlic bulb. And, even more to the point, whatever the remand results say, there is no way to predict at this time whether those remand results ultimately will or will not be sustained by the Court.[20] One

_____

Inc., 289 F.3d 775, 784 (Fed. Cir. 2002) (affirming trial court's decision denying motion for dismissal *without* prejudice, explaining that "under the circumstances, a dismissal without prejudice might well have constituted an abuse of discretion since 3M was plainly seeking to avoid an adverse judgment"). In the instant case, of course, Harmoni and the other Withdrawing Plaintiffs seek dismissal with prejudice.

[19]As discussed below, however, the fundamental flaw in the Domestic Producers' position is that this action is not the proper vehicle under the statute for the vindication of the Domestic Producers' interests in arguing that the dumping margins calculated in Commerce's Final Results are too low. Given that basic fact, it may well be that the plaintiffs here would be entitled to dismiss their action *with prejudice* over the objections of the Domestic Producers even if the reason for the requested dismissal was to avoid an adverse result that was a virtual certainty. But that is a question for another day.

[20]*Compare*, *e.g.*, DuToit, 136 F.R.D. at 85-86 (granting motion for voluntary dismissal without prejudice, over defendants' objections that motive for seeking dismissal was "to avoid what will most likely be a ruling in defendants' favor on their *forum non conveniens* motion given this

or more additional remands may be required, and at least one more judicial decision on the merits will be required, before final judgment can be entered in this case. Thus, as even the Domestic Producers themselves must concede, "the specific content of the Commerce Department's [remand determination] (much less this Court's final decision on the merits) is speculative at this point." *See* Def.-Ints.' Opposition at 8.[21] The Domestic Producers' arguments as to Harmoni's avoidance of an "adverse result" are therefore lacking in substance.

Finally, and most significantly, although the Domestic Producers' competitive interests in the proper assessment of antidumping duties on fresh garlic from China are beyond cavil, this action – brought by the Chinese producers/exporters, contending that the dumping margins in the Final Results are *too high* – is simply not the proper vehicle for the Domestic Producers' vindication of their interests in affirmatively challenging the dumping margins in the Final Results as *too low*. *See generally* Pls.' Motion at 5; Pls.' Reply at 2.

Courts decision in <u>Dawson</u>" (citation omitted); reasoning that "the Court has not indicated how it would rule on the *forum non conveniens* issue in this case; defendants' assertions about plaintiffs' motive are based on what they anticipate would be a ruling in their favor given the Court's earlier holding in <u>Dawson</u>"; and declining to "search[ ] plaintiffs' souls for their true motive in seeking voluntary dismissal" as "an endeavor better left to a divine authority").

[21]Other statements in the Domestic Producers' memorandum similarly reflect the hypothetical and speculative nature of their assertions of alleged potential legal prejudice. *See*, *e.g.*, Def.-Ints.' Opposition at 3 (arguing that, "*if* [Commerce] ultimately relies on this additional information to value garlic bulbs in its [remand determination], there is *a possibility* that the antidumping margins calculated for the Plaintiffs will be higher than the margins calculated . . . in [the] final results") (emphases added); *id*. at 6 (asserting that the Domestic Producers would be adversely affected by permitting Harmoni's withdrawal because Harmoni would "avoid the *possibility* that the Department will calculate an above *de minimis* antidumping duty margin for it in the redetermination.") (emphasis added); *id*. at 8 (alleging  that Commerce's remand determination is "*potentially* trending against" the Chinese Producers' interests) (emphasis added.).

As discussed above, the Domestic Producers, in fact, initially brought their own action, affirmatively challenging the dumping margins in the Final Results as too low. *See* section I, *supra*. By dismissing their own action, however, the Domestic Producers voluntarily abandoned their role as Plaintiffs contesting the Final Results as too low, and relegated themselves to the role of Defendant-Intervenors in the sole remaining case – the instant case, commenced by the Plaintiff Chinese producers/exporters.[22]

Had the Domestic Producers persevered in their own action against Commerce, any changes in the calculated dumping margins resulting from the litigation would have applied to all respondent Chinese producers/exporters (whether or not the Chinese producers/exporters had intervened in the Domestic Producers' action, and whether or not the Chinese producers/exporters maintained the instant action). In other words, if the Domestic Producers had not dismissed their own action, it

[22]The Domestic Producers were clearly cognizant that their role as Defendant-Intervenors in the present action was confined to defending the accuracy of Commerce's Final Results against the Plaintiff Chinese Producers' claims that the dumping margins calculated by the agency were too high. *See* Pls.' Motion at 5; Pls.' Reply at 2. Although the Domestic Producers had abandoned their own action (which challenged Commerce's valuation of raw garlicbulb as too low), the Domestic Producers made no attempt to raise their affirmative claim in their opposition to the Plaintiff Chinese Producers' Motion for Judgment on the Agency Record. Nor could the Domestic Producers – as Defendant-Intervenors – properly have done so. *See* Defendant-Intervenors' Brief in Response to Plaintiffs' Motion for Judgment on the Administrative Record at 17 (candidly acknowledging that "[i]nasmuch as [the Domestic Producers] initially filed [their] own action seeking review of Commerce's use of the "China" Agmarknet price [to value raw garlic bulb], [the Domestic Producers are] not prepared to defend Commerce's choice of the price for garlic designated as "China" in the Agmarknet data as the surrogate value for raw garlic bulb (even though that action was voluntarily dismissed)," but noting that the Domestic Producers were "prepared to defend . . . the principle underlying Commerce's choice – that is the notion that the surrogate value for raw garlic bulb should be . . . representative of the large-bulb garlic exported by the [respondent Chinese Producers] to the United States"); *see generally id*. at 3-4, 16-20 (addressing Chinese Producers' challenge to valuation of raw garlic bulb in calculating Final Results).

would be of no moment to them now whether or not Harmoni and the other three Withdrawing

Plaintiffs were dismissed from this action.

The Domestic Producers "cannot now assert a 'legal right' to seek a change in the final

results after dismissing their own appeal." *See* Pls.' Reply at 2.  Given the statutory scheme

established to govern challenges to Commerce's final determinations in cases such as this, the

Domestic Producers' arguments here cannot constitute cognizable "legal prejudice." *See generally*

Pls.' Reply at 2-3.

As the Withdrawing Plaintiffs conclude, "[i]f [the Domestic Producers] believed that the

Department of Commerce was not assessing shipments of garlic at the correct antidumping duty rate,

then their proper legal recourse was to maintain their appeal challenging the final results of the

administrative review." *See* Pls.' Reply at 2.  Instead, for whatever reasons, the Domestic Producers

dismissed their own action, and chose to proceed solely as Defendant-Intervenors in this action.

Having voluntarily elected to forsake the vehicle established by the statute for the vindication of

their interests in challenging dumping margins as too low, the Domestic Producers cannot now

subvert Congress' statutory scheme by forcing Harmoni to maintain this action so that it can be re-

purposed to serve the Domestic Producers' ends.[23]

### B.  The Other Three Withdrawing Plaintiffs

As set forth above, the Domestic Producers here cannot demonstrate the type of legal

---

[23]As the Withdrawing Plaintiffs note, it is telling that the Domestic Producers' memorandum in opposition to the pending motion makes no mention whatsoever of the separate action that the Domestic Producers themselves brought, but then voluntarily dismissed.  *See* Pls.' Reply at 1-2.

prejudice required to justify denying Harmoni's motion for voluntary dismissal with prejudice. If anything, the Domestic Producers' case against dismissal of the other three Withdrawing Plaintiffs – Jining Trans-High Trading Co., Ltd., Jinxiang Shanyang Freezing Storage Co., Ltd., and Shanghai LJ International Trading Co., Ltd. – is even weaker.

The Domestic Producers first contend that "the present state of the litigation" and "excessive delay and lack of diligence" warrant denial of the motion to dismiss as to the three other Withdrawing Plaintiffs. *See* Def.-Ints.' Opposition at 7. The Domestic Producers assert that, if the three Plaintiffs at issue wished to withdraw, they were required to do so earlier. *See* Def.-Ints.' Opposition at 7-8. According to the Domestic Producers, the three Plaintiffs' failure to seek dismissal prior to the issuance of Zhengzhou Harmoni I warrants denial of their motion. *See* Def.-Ints.' Opposition at 8.[24]

In particular, the Domestic Producers complain that the three Plaintiffs "have now had an opportunity to evaluate both [Zhengzhou Harmoni I], as well as the potential content of the Commerce Department's [remand results]." *See* Def.-Ints.' Opposition at 7. The Domestic Producers argue that "[t]o allow the three . . . Plaintiffs [at issue] to withdraw from this action after assessing the likely impact of the [remand results] is unreasonable," asserting that granting dismissal in this case would "establish a precedent that would enable Plaintiffs to 'opt in' to an action where

---

[24]To be sure, the three Withdrawing Plaintiffs' delay in seeking voluntary dismissal has caused some confusion, which could have been avoided had they timely sought voluntary dismissal when they decided not to join in Plaintiffs' Motion for Judgment on the Agency Record. Nevertheless, for the reasons detailed above, the timing of the pending motion is not grounds for the denial of the motion, given the circumstances of this case. *See generally* section II.A, *supra*.

the Court's initial decision and the agency redetermination are favorable to their interests, and to 'opt out' of an action through voluntary dismissal where it is contrary to their interests." Def.-Ints.' Opposition at 7. But the Domestic Producers' "opt-in/opt-out" argument is devoid of merit, both in general and as applied to this case.

The Domestic Producers predict that, if the pending motion is granted, future plaintiffs will seek to "opt out" of litigation if they perceive that their continued participation will be "contrary to their interests." *See* Def.-Ints.' Opposition at 7-8. As explained above, however, that is precisely the point of Rule 41(a)(2) – to permit a plaintiff to voluntarily dismiss an action, even relatively late in the litigation and even absent the consent of all parties, provided that the dismissal causes no legal prejudice to an opposing party that cannot be remedied by curative conditions. *See* section II.A, *supra*.[25] And, as discussed herein, the Domestic Producers have failed to demonstrate any such legal prejudice.

The Domestic Producers' "opt in" argument is no more well-founded. According to the Domestic Producers, "[h]ad the non-movant Plaintiffs interpreted [Zhengzhou Harmoni I] to be in their favor, they could have filed their own [Motion for Judgment on the Agency Record] raising the same issues, and arguing that the law of the case compels this Court to decide the issues in their

---

[25]Not only are the Domestic Producers off the mark as a matter of law, but – in addition – their "opt out" argument has no sound factual predicate. The Domestic Producers apparently assume that Commerce's forthcoming remand results will reflect an increase in the value of raw garlic bulb over the value used to calculate the Final Results. As discussed in section II.A, however, the remand results have not yet issued. When they are released, the remand results may or may not reflect an increase in the value of raw garlic bulb. And, even more to the point, whatever the remand results say, there is no way to predict at this time whether or not those remand results ultimately will not be sustained by the Court.

favor." *See* Def.-Ints.' Opposition at 8. The Domestic Producers cite no authority for this extraordinary proposition, however; and nothing could be further from the truth.

Unlike the other four Plaintiffs, the three Withdrawing Plaintiffs at issue here failed to file a timely Motion for Judgment on the Agency Record in accordance with the deadline established in the Amended Scheduling Order governing this action. That failure effectively precludes the three Plaintiffs from seeking to avail themselves of <u>Zhengzhou Harmoni I</u> and any subsequent decisions in this matter (to the extent that they might wish to do so), just as surely as their failure effectively precludes them from being bound by the Court's decisions.[26]

The same rationale disposes of the Domestic Producers' assertions that "Trans-High and Shanghai LJ are attempting to avoid [Commerce's] calculation of a positive dumping margin," and that "Shanyang is attempting to avoid its antidumping margin increasing." *See* Def.-Ints.' Opposition at 8.[27] Contrary to the Domestic Producers' claims, dismissal of the three Plaintiffs with prejudice will have no effect on their exposure to increased (or, for that matter, their ability to avail themselves of decreased) dumping margins, because the three Plaintiffs have no such exposure at this time. Nor will the dismissal prejudice the Domestic Producers' asserted "interest in having the appropriate amount of antidumping duties assessed on the shipments" of the three Plaintiffs at issue.

---

[26]*See* Consent Motion to Suspend Deadline to File Remand Results (explaining Government's position that Commerce here is not required "to conduct remand proceedings and make calculations with respect to the three non-participating plaintiffs").

[27]As with Harmoni (*see* n.16, *supra*), the Domestic Producers query why Jining Trans High Trading Co., Ltd. and Shanghai LJ International Trading Co., Ltd. were plaintiffs in this action in the first place, given that Commerce calculated margins of 0.00% for both companies in the Final Results. *See* Def.-Ints.' Opposition at 3, 6 & n.1.

*See* Def.-Ints.' Opposition at 8-9.

In a nutshell, by failing to file a timely Motion for Judgment on the Agency Record challenging the dumping margins set forth in the Final Results, the three Withdrawing Plaintiffs became bound by those margins (without regard to the outcome of this action). Their dismissal with prejudice at this time thus will merely formalize the status that the three Plaintiffs attained months ago, when they essentially defaulted by failing to file a timely Motion for Judgment on the Agency Record.[28]

Under such circumstances, as with Harmoni, there can be no legal prejudice to the Domestic Producers as a result of the voluntary dismissal of the three remaining Withdrawing Plaintiffs. Accordingly, as to Plaintiffs Jining Trans-High Trading Co., Ltd., Jinxiang Shanyang Freezing Storage Co., Ltd., and Shanghai LJ International Trading Co., Ltd., this action shall be dismissed with prejudice.

---

[28]As outlined in section I above, the statutorily-prescribed course of action was for the Domestic Producers to maintain their own action as Plaintiffs challenging the dumping margins calculated by Commerce in the Final Results as too low. The Domestic Producers were entitled to maintain such an action against Commerce, contesting the Final Results as to any or all of the Chinese producers/exporters which were respondents in the agency proceeding; and the Domestic Producers' ability to obtain relief would have been unaffected by the presence or absence of the Chinese producers/exporters as participants (Defendant-Intervenors) in that action. As discussed above, however, the Domestic Producers voluntarily dismissed their own action.

Having voluntarily abandoned the vehicle established by the statute for the vindication of their interests in challenging dumping margins as too low, the Domestic Producers cannot now subvert the statutory scheme by forcing the Withdrawing Plaintiffs to maintain *this* action in order to serve the Domestic Producers' interests.

### III.  <u>CONCLUSION</u>

For all the reasons set forth above, Plaintiffs' Partial Consent Motion for Voluntary Dismissal is granted, and Plaintiffs Zhengzhou Harmoni Spice Co., Ltd., Jining Trans High Trading Co., Ltd., Jinxiang Shanyang Freezing Storage Co., Ltd., and Shanghai LJ International Trading Co., Ltd. shall be dismissed with prejudice from this action.  *See* USCIT R. 41(a)(2).


/s/ Delissa A. Ridgway

-----------------------------------

Delissa A. Ridgway
Judge

Decided:  January 25, 2010
              New York, New York